Ronald J. HACKETT,
Petitioner–Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Respondent–Appellee.

No. 86–6081.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1987.

Dec. 8, 1987.

Mark A. Sipek, argued, Louisville, Ky., court-appointed, for petitioner-appellant.

Louis DeFalaise, U.S.Atty., Lexington, Ky., Monica Wheatley, Robert Rawlins, Richard K. Preston, argued, for respondent-appellee.

Before JONES, GUY, and BOGGS, Circuit Judges.

PER CURIAM.

Petitioner, Ronald J. Hackett, appeals from the denial of his petition for a writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner filed his *pro se* petition seeking to challenge the presumptive parole date imposed by the United States Parole Commission. Petitioner contends that the Commission improperly set the release date outside the range established under the recommended parole guidelines and that the Commission erred by relying on evidence which was not produced at trial and was specifically rejected by the sentencing judge. In addition, petitioner argues that he is entitled to immediate release under the provisions of the recently enacted Sentencing Reform Act of 1984 (Title II of the Comprehensive Crime Control Act of 1984). For the following reasons, the judgment of the district court denying the writ of habeas corpus is affirmed.

## I.

Petitioner was convicted on federal charges of abducting a bank employee in connection with an unsuccessful attempt to obtain ransom from the bank, in violation of 18 U.S.C. § 2113(a), (b), and (d). On June 6, 1979, petitioner was sentenced to serve 40 years in federal prison. The conviction was affirmed on appeal. *United States v. Hackett*, 623 F.2d 343 (4th Cir.), *cert. denied*, 449 U.S. 902, 101 S.Ct. 273, 66 L.Ed.2d 132 (1980).

Under his original sentence, petitioner was required to serve a minimum term of ten years before becoming eligible for parole. 18 U.S.C. § 4205(a) (repealed effective Nov. 1, 1987). In response to a motion for reduction of sentence, the sentencing court revised the sentence to allow petitioner to become eligible for parole at any time deemed appropriate by the Parole Commission. 18 U.S.C. § 4205(b)(2) (repealed effective Nov. 1, 1987). Petitioner alleges that he was informed by his case manager that he would receive a presumptive parole date somewhere between the 40–52 month range recommended in the guidelines for kidnap offenses such as his where the victim was released unharmed.

Prior to Hackett's initial parole hearing, the Assistant United States Attorney who had prosecuted his case revealed to the Parole Commission that the victim had in fact been raped by her abductors. The victim had initially told the police that she had not been harmed. While being interviewed for a "Victim Impact Statement," she subsequently stated that she had also been raped, but she requested that the fact not be made public in order to avoid further humiliation. At the sentencing hearing on June 6, 1979, the trial court, responding to an inquiry from petitioner's counsel, stated that it would not consider the allegation of rape when setting the sentence. In light of the fact that the petitioner's sentence was subsequently reduced, the federal prosecutor submitted a standard form entitled "Report on Convicted Prisoner by U.S. Attorney" (Form USA 792) to the Parole Commission disclosing the rape allegation. After receiving the victim's permission, a copy of the Victim Impact Statement was also sent to the Parole Commission. The prosecutor also noted that the victim had been severely traumatized by the incident and continued to undergo psychiatric treatment.

On May 12, 1981, the Parole Commission conducted an initial parole hearing at which petitioner was represented by counsel and was given an opportunity to respond to the victim's allegations. Petitioner not only denied any involvement in the alleged rape, but also disclaimed any responsibility for the abduction for which he had been convicted. Petitioner claimed that the kidnappers had forced their way into his house where they had held both he and the bank employee at gun point. Petitioner admitted that he knew the kidnappers, but he would not reveal their names. Petitioner's counsel attempted to discredit the victim's allegations of rape by showing that they were uncorroborated and unsubstantiated by any physical or medical evidence. In addition, counsel noted that the victim had not been subjected to cross-examination and that her accusations were inconsistent with her original statements to the police.

On June 26, 1981, the Parole Commission adopted the recommendation of the hearing panel and ordered that petitioner be required to serve a minimum of 120 months and fixed his parole date at December 28, 1988. Petitioner's offense behavior was rated in the parole guidelines at "Greatest II" severity because he was involved in a kidnapping for ransom. *See* 28 C.F.R. § 2.20 (1981). By virtue of his good behavior in prison, petitioner was given a salient factor score of 7. Under the guidelines then in effect, petitioner's combined ratings resulted in a recommended minimum term of 64 months with no upper limit in this category. The Parole Commissioner's decision was affirmed on administrative appeal by both the Regional and National Appeals Boards.

Subsequent to the final administrative action, petitioner received two "statutory interim hearings" from the Parole Commission. The second hearing was held on April 4, 1985. The summary of that hearing shows that there had been a "favorable change in the guidelines" and petitioner's offense severity rating was changed to a "category 7" under the new rating system and, accordingly, petitioner's guideline range was reduced from 64 months or more to 64–92 months.[1] Nevertheless, it was determined that petitioner's presumptive parole date would remain unchanged due to the fact that the victim had been raped. On April 22, 1985, the Commission issued a "Notice of Action" informing petitioner that his offense severity rating had been changed to category 8. Apparently this action was taken because the Commission had erred in making its previous assessment.[2] Under category 8, the guidelines called for a minimum term of 120 months with no upper limit on the time served within the sentence. *See* 28 C.F.R. § 2.20 (1986).

After petitioner exhausted his administrative appeals, he filed a petition for a writ of habeas corpus relief under 28 U.S.C. § 2241 charging that the Parole Commission had improperly considered the allegation of rape and that the Commission had erred in setting his presumptive parole date beyond the period recommended under the guidelines. The case was referred to a magistrate who found that the Commission was free to consider the information contained in the presentence reports, including the accusation of rape. Accordingly, the magistrate recommended that the petition be denied.

Petitioner subsequently sought to amend his petition to include an additional claim for release based on his interpretation of the Sentencing Reform Act of 1984. On September 12, 1986, the district court issued an order granting petitioner's motion to file an amended petition and, after considering "the entire record," adopted the magistrate's recommendation and denied the petition. The district court's opinion did not discuss the issues relating to the Sentencing Reform Act.

II.

The federal court's scope of review over a decision by the Parole Commission is extremely limited. This court has previously held that "the Parole Commission's substantive decision to grant or deny parole is an action 'committed to agency discretion' under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and thus is insulated from judicial review." *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984). *See also Brest v. Ciccone*, 371 F.2d 981 (8th Cir.1967) (the Board is given absolute discretion on matters of parole). The Court of Appeals for the Seventh Circuit has applied a limited "abuse of discretion"

---

1. Under the new guidelines, the old classifications of "Greatest I & II" have been replaced with a scale of categories numbered 1 through 8. The other component of the guidelines, the "salient factor score," remained essentially unchanged. *See* 28 C.F.R. § 2.20 (1986).

2. Chapter Two, subchapter C of the current Behavior Severity Index provides in part:

221 *Kidnapping*
(a) If the purpose of the kidnapping is for ransom or terrorism, grade as Category Eight. 28 C.F.R. § 2.20 (1986). Thus, under the new guidelines, petitioner's offense severity rating should have been classified under Category Eight because it involved a "kidnapping for ransom."

standard when reviewing decisions of the Parole Commission:

A court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.

*Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir.1982).

■ On appeal, petitioner contends that the Commission erred by taking into consideration the victim's claim that she had been raped during the course of her abduction. We find that the Commission was acting within its statutory and regulatory authority when it considered such evidence.

In making parole decisions, the Commission is required by statute to consider all available relevant information concerning the prisoner, including presentence investigative reports. *See* 18 U.S.C. § 4207(3) (1982) (repealed effective Nov. 1, 1987).[3] The regulations promulgated pursuant to the statute also provide that the Commission "shall" consider presentence investigative reports. *See* 28 C.F.R. § 2.19(a)(3) (1986).[4] The regulations also require that the prisoner be apprised of the information and given an opportunity to respond. 28 C.F.R. § 2.19(c).[5] The Commission must

---

3. Title 18 U.S.C. § 4207 provides:

§ 4207. **Information considered**

In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:

(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;

(3) presentence investigation reports;

(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;

(5)[1] a statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim; and

(5)[1] reports of physical, mental, or psychiatric examination of the offender.

There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available.

(Footnote omitted).

4. Title 28 C.F.R. § 2.19 provides in part:

§ 2.19 **Information considered.**

(a) In making a parole or reparole determination the Commission shall consider, if available and relevant:

(1) Reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) Official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;

(3) Pre-sentence investigation reports;

(4) Recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge and prosecuting attorney;

(5) Reports of physical, mental, or psychiatric examination of the offender; and

(6) A statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim.

(b)(1) There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available (18 U.S.C. 4207). The Commission encourages the submission of relevant information concerning an eligible prisoner by interested persons.

. . . .

(d) Recommendations and information from sentencing judges, defense attorneys, prosecutors, and other interested parties are welcomed by the Commission. In evaluating a recommendation concerning parole, the Commission must consider the degree to which such recommendation provides the Commission with specific facts and reasoning relevant to the statutory criteria for parole (18 U.S.C. 4206) and the application of the Commission's guidelines (including reasons for departure therefrom). Thus, to be most helpful, a recommendation should state its underlying factual basis and reasoning. However, no recommendation (including a prosecutorial recommendation pursuant to a plea agreement) may be considered as binding upon the Commission's discretionary authority to grant or deny parole.

5. Title 28 C.F.R. § 2.19(c) provides:

resolve any dispute over the accuracy of the information by using the preponderance of the evidence standard. *Id.*

 In the case at bar, the Commission correctly followed the statutory and regulatory procedures set forth above. A Victim Impact Statement, such as the one filed in this case in which the victim alleged she had been raped, is considered part of the presentence report. *See* Fed.R.Crim.P. 32(c)(2)(C).[6] Therefore, the victim's statements were properly before the Commission. Moreover, contrary to petitioner's contentions, the Parole Commission may consider such evidence even though the sentencing judge had expressly refused to consider the rape allegation. *See Ochoa v. United States*, 819 F.2d 366, 372 (2d Cir. 1987) ("Where ... the sentencing court has [disclaimed] reliance on contested statements, the Commission is free to use the disclaimed portion of the report if it finds the information sufficiently accurate for its own purposes."). Nor does the fact that the allegations were unsubstantiated preclude the Commission from considering them when determining the prisoner's eligibility for parole. *See Maddox v. Parole Commission*, 821 F.2d 997, 999 (5th Cir. 1987) ("[T]he Commission may consider dismissed counts of an indictment, hearsay evidence, and allegations of criminal activity for which the prisoner has not even been charged." (citations omitted)). The courts have also held that the use of such evidence by the Commission in making parole determinations does not offend the constitutional requirements of due process. *See, e.g., Ochoa*, 819 F.2d at 372–73.

To the extent that petitioner complains that the Commission erred in choosing to credit the victim's allegations as opposed to his denials, we have no power to overturn a credibility determination made by the Commission. *See Farkas*, 744 F.2d at 39. The record reveals that the Commission resolved the dispute by applying the preponderance of the evidence standard set forth in the regulations and we cannot disturb the factual findings reached by the Commission under this standard.

Petitioner contends that the Commission may not depart from the range of parole dates recommended under the guidelines absent a showing of "good cause." *See* 18 U.S.C. § 4206(c) (repealed effective Nov. 1. 1987). We note that it is unclear as to whether the Commission did in fact exceed the range set forth in the guidelines, since it would appear that when the regulations were applied correctly, the relevant guidelines contained no upper limit on the amount of time which the petitioner could be required to serve.

Even assuming, *arguendo*, that the Commission did deviate from the recommended guidelines, this court cannot substitute its judgment for that of the Parole Commission as to what constitutes "good cause" for departing from the guidelines. *See Maddox*, 821 F.2d at 1000 ("good cause" includes any substantial reason which is not "arbitrary, irrational, unreasonable, irrelevant, or capricious.") (quoting H.R. Conf.Rep. No. 94–838, 94th Cong., 2nd Sess. 27, *reprinted in* 1976 U.S. Code Cong. & Admin. News 351, 359). As previously noted, the Commission had the au-

---

(c) The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, *provided the prisoner is apprised of the information and afforded an opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability.* However, the Commission shall not consider in any determination, charges upon which a prisoner was found not guilty after trial unless:

(1) Reliable evidence is presented that was not introduced at trial (e.g., a subsequent admission or other clear indication of guilt); or

(2) The prisoner was found not guilty by reason of his mental condition.

(Emphasis added).

6. Fed.R.Crim.P. 32(c)(2)(C) provides:

*Report.* The presentence report shall contain—

(C) information concerning any harm, including financial, social, pyschological, and physical harm, done to or loss suffered by any victim of the offense....

thority to consider the victim's allegations that she had been raped and to credit those statements as being true. Certainly, this factor is a legitimate consideration when determining the petitioner's presumptive parole date and we cannot say that it does not constitute "good cause" for setting a parole date beyond what the guidelines would have otherwise called for.

### III.

■ Petitioner also contends that he is entitled to immediate release under the provisions of the Sentencing Reform Act of 1984. Specifically, petitioner relies on section 235(b)(3) of the Act which provides:

> The United States Parole Commission shall set a release date for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

Pub.L. No. 98–473, § 235(b)(3), 98 Stat. 1837, 2032 (1984).

Petitioner argues that he will still be on parole five years after the effective date of the Act and, therefore, he will be within the Commission's "jurisdiction." Thus, petitioner concludes, the Commission is required under section 235(b)(3) to set his parole date between the 64–92 month range set forth in the guideline which he finds applicable to his case. Since petitioner has already served in excess of 92 months, he claims that he is eligible for immediate release.

We find several faults with this argument. First, as previously noted, it appears that when the guidelines are properly applied, there is no upper limit on the range of parole dates which the Commission could set. Therefore, even if section 235(b)(3) applied in this case, petitioner's presumptive parole date of December 28, 1988, is "within the range that applies to the prisoner under the applicable parole guideline."

Second, this court has previously held that section 235(b)(3) did not become effective until November 1, 1987. *Miller v. Story,* 814 F.2d 320, 321 (6th Cir.1987) (citing Pub.L. 99–217, § 4, 99 Stat. 1728 (1985)). *But see Romano v. Luther,* 816 F.2d 832, 839 (2d Cir.1987) (holding that although the five-year transition period begins November 1, 1987, section 235(b)(3) became effective upon enactment).

Even assuming that section 235(b)(3) is currently effective, it is not applicable in this case. Petitioner argues that the term "jurisdiction" should be construed as referring to the entire period under which he is subject to the authority of the Parole Commission, including the period he is free on parole. The Parole Commission has adopted a different interpretation of the statute. According to the Commission, the term "jurisdiction" as it appears in section 235(b)(3) only refers to the period during which the prisoner is actually incarcerated and does not extend to the parole period.

The Commission's interpretation has recently been codified in a regulation which appears at 28 C.F.R. § 2.64, 52 Fed.Reg. 5763–64 (Feb. 26, 1987), which provides in part:

> (a) It is the Commission's interpretation of Section 235(b)(3) of the Sentencing Reform Act of 1984 (Chapter 2 of the Comprehensive Crime Control Act of 1984) as originally enacted, that persons who will be incarcerated at the expiration of five years after the effective date of the Sentencing Reform Act, and whose sentences provide for parole eligibility, shall, before the expiration of that five-year period, be given release dates by the Commission within the guideline ranges found by the Commission to be appropriate for their cases.
>
> (b) The release dates required by Section 235(b)(3) need not be set any earlier than the time required to allow an administrative appeal within the five-year period; i.e., three to six months before the end of that period. Thus, the Commis-

sion may continue to make decisions outside of its guideline ranges, with such decisions being subject to a *de novo* review and modification by the Commission to conform to the guideline ranges before the end of the five-year period.

(c) *Section 235(b)(3) does not apply to person who will be on parole or mandatory release supervision at the expiration of the five-year period.*

28 C.F.R. § 2.64 (emphasis added).

Since petitioner's presumptive parole date is December 28, 1988, he should be released approximately four years prior to the expiration of the five-year transitional period which begins November 1, 1987. Thus, under the Commission's interpretation, section 235(b)(3) would not apply because the petitioner will no longer be incarcerated at the end of the transitional period.

The Commission's interpretation of its duties under section 235(b)(3) is binding on this court unless it is manifestly unreasonable. *Federal Election Comm'n v. Democratic Senatorial Campaign*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981). We find that the Commission's interpretation is consistent with the purpose of the statute, the legislative history of the Act, and the subsequent judicial interpretations of section 235(b)(3).

Section 235(b)(3) refers to the setting of a "release date" which clearly implies that it is directed towards prisoners who are still incarcerated as opposed to those who have already been released on parole. Moreover, the release date need not be set until "the day before the expiration of five years after the effective date of this Act." The Act also provides that it be set "early enough to permit consideration of an appeal of the release date." The Parole Commission has interpreted this to mean that it is not required by the Act to make final parole determinations until approximately three months prior to the November 1, 1992 deadline, since it normally requires three months to complete an administrative appeal of a parole decision.

We find that this is a logical interpretation of section 235(b)(3) which was designed to ensure that all federal prisoners would receive a fixed parole date prior to the expiration of the current parole system. Under the new determinate sentence system, prisoners sentenced under the new Act will serve a predetermined sentence without the possibility of parole. Prisoners released prior to the effective date of the Act have obviously already received a parole date and, therefore, are unaffected by the transition to the new system.

The Commission's interpretation of section 235(b)(3) is also supported by the legislative history of the Act which provides the following explanation of the operation of this provision:

Most of those individuals incarcerated under the old system will be released during the five-year period. As to those individuals who have not been released at that time, the Parole Commission must set a release date for them prior to the expiration of the five years that is consistent with the applicable parole guidelines.

S.Rep. No. 98–225, 98th Cong., 1st Sess. 189, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3372.

Finally, we note that prior to the promulgation of the Commission's interpretive regulation, the Court of Appeals for the Second Circuit had adopted a similar interpretation of section 235(b)(3). *See Romano v. Luther*, 816 F.2d at 839–41. The *Romano* court specifically rejected the interpretation which petitioner is advocating in the case at bar. The Second Circuit held that section 235(b)(3) was not applicable to the prisoner because his parole date was set for November 27, 1988, almost four years before the expiration of the five-year transition period. 816 F.2d at 840–41.

In sum, we find that the Commission's interpretation of section 235(b)(3) is reasonable and, accordingly, the section does not apply to the petitioner in this case.

For the foregoing reasons, the denial of the writ of habeas corpus is AFFIRMED.