**Brett C. KIMBERLIN, Petitioner,**

v.

**O.I. WHITE, Warden, and the United States Parole Commission, Respondents.**

**No. 90–2647.**

United States District Court, W.D. Tennessee, W.D.

June 8, 1992.

Nathan Bicks, Memphis, Tenn., for petitioner.

Hariett M. Halmon, Asst. U.S. Atty., Memphis, Tenn., for respondents.

### REVISED[1] ORDER ON OBJECTIONS AND EXCEPTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

TURNER, District Judge.

The petitioner, Brett C. Kimberlin, with the diligent and extraordinarily skilled assistance of his attorneys, pursues his second application for a writ of habeas corpus in this court. The historical facts surrounding Kimberlin's attempts prior to this petition to obtain an earlier presumptive parole eligibility date are lengthy and have been fully recorded and set out on multiple occasions in this record and do not now bear detailed repeating.

Suffice it to say that the petitioner received consecutive federal sentences of incarceration in 1980 and 1981 which totaled in excess of 50 years and he has been incarcerated since that time. The judgments included sentences, among others, for conspiracy to possess with intent to distribute 10,000 pounds of marijuana, possession of unregistered explosive devices, unlawful manufacture of a destructive device, impersonation of a federal officer, five counts of malicious damage by means of an explosive, and malicious damage by means of an explosive involving personal injury. The crimes of which the defendant was convicted were extremely serious and many of them involved substantial risk of devastating personal injury to innocent bystanders by the detonation of bombs in areas open to the public. One of his crimes resulted in exactly such an injury when a passerby was caught in the explosion and lost his leg as a result. The man's wife was injured, but luckily not so grievously.

Since his incarceration, however, the petitioner, who is a man of above average intelligence and physical prowess, has achieved noteworthy and remarkable levels of education, sporting endeavors, prisoner assistance efforts and other substantial matters which are contained in this court's records. There is significant evidence that he has turned his talents in a more productive direction than was true prior to his convictions. Some of these efforts unquestionably deserve consideration during any evaluation of his parole release date from prison.

The United States Parole Commission, which is charged under 18 U.S.C. § 4203(b)[2] with the responsibility for the

---

1. This Order, which contains only minor changes, replaces the Order issued May 22, 1992, in its entirety.

2. This statute provides in part: "The Commission ... pursuant to the procedures set out in this chapter, shall have the power to—(1) grant or deny an application or recommendation to parole any eligible prisoner...." 18 U.S.C. § 4203(b)(1) (1988) (repealed 1984).

Section 235(a)(1) of the Comprehensive Crime Control Act of 1984 provided that the repeal of Title 18, chapter 311 of the United States Code (18 U.S.C. §§ 4201 to 4218) was to be effective Nov. 1, 1987. Comprehensive Crime Control

administration of the federal parole system and the determination of parole release dates for federal inmates has promulgated and utilizes a guidelines structure to assist in the exercise of its discretion to determine an inmate's presumptive parole release date. The "Paroling Policy Guidelines" are, however, merely guidelines and expressly do not preclude the Parole Commission from assigning parole dates that are either above or below the guideline range. However, because of the fact that petitioner's sentences exceeded 30 years, he was not eligible for parole in any event until after he had served at least 10 years.

Upon its initial review in 1988 of petitioner's application for parole, the Parole Commission with some dissent concluded that Kimberlin's offenses called for a severity rating of 8; this conclusion, when combined with his offender characteristic of "good," placed petitioner in a guideline category that indicated a "customary total time to be served" of at least "120 months+" under 28 C.F.R. § 2.20 (1991) before he would be eligible for parole. Since this category was the top severity level within the guidelines, it did not provide for a "customary" maximum time before an inmate was eligible for parole. After hearing petitioner's appeal the National Appeals Board/Full Commission of the Parole Commission determined that the petitioner should continue with his incarceration for 228 months to a presumptive parole release date in 1998.

Kimberlin then filed his first application for a writ of habeas corpus in this court which resulted in the matter being remanded to the Parole Commission for reconsideration following this court's holding that the Commission had erroneously disregarded a specific regulation that prohibited its use of multiple offenses to move the petitioner from a category 7 to a category 8 severity rating. In the order of remand the court directed that certain mitigating evidence be considered. On remand, the Commission reconsidered and concluded that the petitioner's presumptive parole date should be

set at 180 months, which is 4 years less than their original determination. The Commission specifically held that the petitioner's severity category is 7, which under the guidelines provides for a customary period of incarceration before release of 64 to 92 months. The examiner panel which initially heard petitioner's application on remand recommended an incarceration of 180 months, 88 months beyond the customary maximum for a severity rating 7 because:

> [T]he bombing or the placing of the explosive devices [which] caused a serious bodily injury to one of the victims ... represents at a minimum the top of the guidelines. Further, we feel that the other offenses, impersonating a Federal officer and distribution of marijuana, would represent some consideration. As a result of the subject's involvement in at least 7 other bombs, causing property damage, would require additional service of sentence above the guidelines.
>
> In our opinion, the subject's criminal conduct during the period of this time was extremely significant plus the number of bombings and we believe that total service of 15 years would represent accountability for the offense and all of the aggravating factors.
>
> . . . .
>
> It is our opinion that a recommendation less [than] 180 months or 15 years, regardless of [mitigating factors], would diminish the seriousness of the subject's behavior, specifically the bombing causing serious bodily injury, and the multiple bombings in which the subject was involved.

(Hearing Summary, 3/1/90, p. 2–3).

The hearing panel's recommendation was concurred in by the Regional Commissioner and the National Commissioners, and the Full Commission affirmed those decisions. The effect of these decisions is that the petitioner, whose full term sentence runs to the year 2030, will not reach his presumptive parole release date until sometime in

---

Act of 1984, Pub.L. No. 98–473, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1837, 2031. Section 235(b)(1)(A) of the Act provided that for any offense committed prior to Nov. 1, 1987, chap-

ter 311 would remain effective for five years thereafter (Nov. 1, 1992). *Id.* at 2032. Thus, as to petitioner, the provisions of 18 U.S.C. §§ 4201 to 4218 are still effective.

February 1994 with a release to a community correction center (halfway house) approximately 6 months before that in the summer of 1993.

Following the Full Commission's decision, the petitioner filed his second application for a writ of habeas corpus which was referred to the magistrate judge for initial consideration. The magistrate judge in his written Report recommends that the court dismiss the petition. Kimberlin has timely filed 6 objections to this Report and its recommendation and argues:

1) The Commission's decision to depart from the top of the applicable guideline range was arbitrary and capricious;

2) The Commission's decision was vindictive;

3) There is an appearance in the Commission's decision of political vindictiveness;

4) The Commission abused its discretion and denied him due process by failing to consider the psychological evidence he presented;

5) The court can review the Commission's decision not to give proper consideration to mitigating factors;

6) The petitioner's argument that his salient factor score was incorrectly determined is not barred even though he did not raise that argument in his earlier application for a writ.

The court reviews the record to make a de novo determination as to those portions of the Report and the recommendations to which objection is made by petitioner.

## WAS THE DEPARTURE ARBITRARY OR IRRATIONAL

■ Petitioner first objects to the magistrate judge's conclusion that the determination of the Commission that the petitioner should not be granted parole within the parole guideline range is not judicially re-

viewable. Petitioner argues that the Commission's decision that he must serve 180 months before reaching his presumptive parole release date was not based on good cause but rather was the product of an arbitrary, irrational, unreasonable, irrelevant and capricious decision of the Commission. The magistrate judge recommended that "this court cannot review the parole commission's exercise of its discretion to go beyond the guidelines, no matter which way the commission is alleged to have exercised its discretion." (Report, p. 4). The Sixth Circuit Court of Appeals has held:

> Under 18 U.S.C. § 4218(d) [3], the Parole Commission's substantive decision to grant or deny parole is an action "committed to agency discretion" under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and thus is insulated from judicial review. It is clear, therefore, that Congress intended to commit these substantive decisions to the unreviewable discretion of the Commission. (citation omitted) (footnote added).

*Farkas v. United States*, 744 F.2d 37, 39 (6th Cir.1984).

That decision, which is controlling authority in this court, represents the consensus of the federal appellate courts which have reviewed that issue.

Section 4218(d) of the Act, however, provides that decisions of the Commission in granting, denying, conditioning, modifying or revoking parole under section 4203(b)(1), (2), (3), which are *substantive* in nature, are committed to the discretion of the Commission and are not reviewable under 5 U.S.C. § 701(a)(2).

By these provisions, Congress has specifically rebutted the presumption of reviewability of the Commission's substantive decisions to grant or deny parole, and, therefore, these decisions may not

---

**3.** Title 18 United States Code section 4218(d) provides:

Actions of the Commission pursuant to paragraphs (1), (2), and (3) of section 4203(b) shall be considered actions committed to agency discretion for purposes of section 701(a)(2) of title 5, United States Code.

Section 4203(b) of title 18, United States Code, provides in part:

The Commission ... shall have the power to—

(1) grant or deny an application or recommendation to parole any eligible prisoner;

(2) impose reasonable conditions on an order granting parole;

be reviewed even for abuse of discretion. (citation omitted).

*Wallace v. Christensen,* 802 F.2d 1539, 1544–45 (9th Cir.1986) (en banc).

The Third Circuit and the Fourth Circuit have also reached similar conclusions. *Garafola v. Wilkinson,* 721 F.2d 420 (3d Cir. 1983), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1681, 80 L.Ed.2d 155 (1984); *Garcia v. Neagle,* 660 F.2d 983 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982).

It should therefore be clear and all parties recognize that this court does not have the legal authority to override the decision of the Parole Commission to grant or deny parole. That is a substantive decision that Congress has by law committed to the hands of the Commission.

■ But petitioner argues that the parole laws place limitations on the discretion of the Commission to depart from the guidelines and points to 18 U.S.C. § 4206(c), which provides:

> The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided,* That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

That statute reflects that the Commission has the authority to deny parole to a prisoner within the guideline incarceration range if in its judgment good cause exists for such a departure. The Sixth Circuit has acknowledged this authority:

> Although the guidelines on their face appear to be mechanical computations, they are in fact "merely guidelines" from which the Commission is free to depart for good cause. 28 C.F.R. § 2.20(c).

*Farkas,* 744 F.2d at 39.

In Kimberlin's case the Commission set forth its reasons as stated earlier in this opinion (*see supra,* at 475.[4] Petitioner argues that the stated reasons do not provide "good cause" for the departure from the guidelines.

The Sixth Circuit has not addressed the issue of whether this court may inquire into whether the requisite good cause exists to support the Commission's decision to deny parole for 180 months, but, as noted, the court is not authorized to measure whether the factors utilized by the Commission weigh in favor of its determinations. The sufficiency of the facts and the weight they warrant are judgments that the Commission must, by law, decide. On the other hand the Sixth Circuit has recognized in *Farkas* that an inquiry into the legality of the agency action, as opposed to the appropriateness of that action, is within the realm of judicial review. The proper issue is therefore whether the Commission has set forth facts that in its judgment constitute good cause to depart from the guideline incarceration range that would otherwise apply in determining Kimberlin's presumptive parole release date; the issue is not whether this court would find such factors constitute good cause but whether these factors are arbitrary, irrational, unreasonable, irrelevant or capricious.

> Congress intended that "good cause" to deviate from the Guidelines would include "only those grounds put forward by the Commission in good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious." *Joint House–Senate Conference Report* No. 94–838, 94th Cong. 2d Sess. 27, *reprinted in* 1976 U.S.Code Cong. & Ad.News 351, 359.

*Wallace,* 802 F.2d at 1544.

Even assuming, *arguendo,* that the Commission did deviate from the recommended guidelines, this court cannot substitute its judgment for that of the Parole Commission as to what constitutes "good cause" for departing from the guidelines. *See Maddox* [*v. U.S. Parole Commission*], 821 F.2d [997] at 1000 [5th

---

4. The National Commissioners stated: "After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: You were involved in multiple bombings." (Notice of Action, Exhibit Y to Return on Second Petition for Writ of Habeas Corpus).

Cir.1987] ("good cause" includes any substantial reason which is not "arbitrary, irrational, unreasonable, irrelevant, or capricious.") (quoting H.R.Conf.Rep. No. 94–838, 94th Cong. 2nd Sess. 27, *reprinted in* 1976 U.S.Code Cong. & Admin.News 351, 359).

*Hackett v. U.S. Parole Commission,* 851 F.2d 127, 131 (6th Cir.1987).

The Commission's stated reasons for departure from the guideline range reflect that it considered that the petitioner's bombing conviction, which resulted in serious personal injury, was sufficient to warrant denial of parole until petitioner had served the maximum time in his guideline range. The Commission (Examiner Panel) further stated that his other convictions, impersonating an officer and possession of marijuana with intent to distribute, warranted the service of additional time before parole. Moreover the Commission (both the Examiner Panel and the National Commissioners) noted that the petitioner had been involved in multiple bombings in addition to the one which resulted in personal injury. These factors in the statements of the Parole Commission were the basis for the departure from the guideline range.

There can be no serious question whether these factors are proper considerations for the Commission in determining to depart from the guideline range. The guidelines themselves recognize that multiple offenses may form a basis to depart in cases involving category 7:

> If an offense behavior involved multiple separate offenses, the severity level may be increased. Exception: in cases graded as Category Seven, multiple separate offense are to be taken into account by consideration of a decision above the guidelines rather than by increasing the severity level.

28 C.F.R. § 2.20, Chapter 13, Subchapter (A)(2), at 111 (1991).

There is nothing arbitrary, irrational, unreasonable, irrelevant or capricious in considering such multiple and serious offenses in assessing good cause to depart from the guideline range. Moreover the court does not believe that any reasonable person could conclude otherwise. Were it not for other issues dealing with petitioner's allegations about a prominent political personality and the fact that there are other mitigating factors, this tangential issue would not warrant the lengthy consideration that it has achieved. Suffice it to say that this factual record fully supports finding of good cause.

■ Petitioner also argues that the amount of departure determined by the Commission to be appropriate—88 months or nearly double the guideline range maximum of 92 months—is itself arbitrary and capricious. However, having determined that the Commission operated on facts that could support a determination of good cause for an upward departure, there is no legal basis for this court to interject its judgment of the proper time for petitioner's parole date. That is a function, as already pointed out, that has been assigned by Congress to the discretion of the Parole Commission.

■ Petitioner argues that the Commission must employ some rational, incremental standard for departures, and would apparently require the Commission to set that standard out before fixing any date for parole.[5] The Commission Examiner Panel specifically pointed out that it had concluded that service of a sentence of less than 15 years would diminish the seriousness of petitioner's criminal behavior. That judgment is exactly what Congress has committed to the discretion of the Commission.

---

**5.** Petitioner argues that the Commission did have a standard for departure and that the Commission routinely used the bottom of the next higher guideline range as the limit for departure. This standard is "[t]he most rational way to determine a parole departure...." There is absolutely nothing in this record or the Code of Federal Regulations that suggests such a standard exists and the respondent denies it. Lack-

ing any support in this record to assume that such a standard was being used routinely, there is no support for the argument that the Commission's failure to follow the alleged standard was arbitrary. Moreover the petitioner's explicit recognition that such a standard would only be one rational standard among many precludes any argument that this court must impose that standard on the Commission's discretion.

While it is true that pre-existing standards that are adhered to may substantially avoid the appearance of arbitrariness, the statutory allowance for departure from the guidelines implicitly recognizes that not all factual combinations may be codified in advance and that the Commission must have the authority to deal more severely with facts that provide good cause to depart and to determine the appropriate presumptive parole release date based on the individual facts of the prisoner's case.

This court finds that the Commission's determination that the service of a minimum period of incarceration of 15 years is not arbitrary or capricious.

## IS THE COMMISSION'S DECISION TAINTED BY THE APPEARANCE OF VINDICTIVENESS

■ Petitioner asserts that the determination of the Commission upon remand by this court to require him to serve 180 months before his presumptive parole date was presumptively vindictive for two reasons: (1) Initially the Commission assigned the petitioner a presumptive parole release date that exceeded the bottom or minimum of the Category 8 guidelines by 108 months. Upon remand by this court and after a determination that Category 8 was not the applicable guideline range, the Commission fixed a presumptive parole release date 116 months above the bottom or minimum of Category 7. Petitioner asserts that this 8 month difference is presumptively vindictive; (2) The petitioner also argues that it was vindictive for the Commission to assign a presumptive parole release date that exceeded the bottom of Category 8 after this court's earlier order which disallowed the Commission's use of multiple offenses to raise the petitioner from a Category 7 to a Category 8.

Although the petitioner has found some numbers that can be utilized to argue that the Commission has increased the departure from Category 7's minimum level com-pared to the amount of the earlier departure from the minimum of Category 8, these numbers provide no basis to conclude that the Commission's determination of a period of incarceration over the minimum of the applicable category is vindictive. The undisputed fact is that the Commission on remand reduced petitioner's presumptive parole release date by 4 years. Earlier the Commission had decided that the petitioner must serve 228 months before parole; now it finds that he must serve only 180 months. It is difficult to overcome the conclusions that this simple arithmetic demands. Nothing in this record, nor logic itself, suggests that any revised departure from a guideline range must relate numerically in any particular way to the minimum incarceration of any given category.[6]

■ Kimberlin also asserts that an appearance of political vindictiveness has been created by the fact that the Parole Commission, the members of which are appointed by the President, determined on remand that he would be given a presumptive parole release date in 1994, a date after the next presidential election in 1992, rather than in 1998. Kimberlin's memorandum presents the position that "the argument can be made that Mr. Kimberlin is being denied parole for partisan political purposes" and that "from allegations that Mr. Kimberlin has made and shared with the media as to his past relationship with now Vice President Quayle, it appears that the present administration in Washington may not want him released until after the 1992 elections." The basis for these vague and nebulous allegations is that Kimberlin has made statements that Vice President Quayle had in the past bought marijuana from him for personal use.

In October 1988, a friend of the petitioner informed the media of these statements by Kimberlin. The next month, the National Parole Commission rejected both the panel recommendation of 168 months dated July 1988, and the Regional Commissioner's recommendation, dated August 12,

---

**6.** It is worth noting that a variation of 8 months relative to presumptive parole release dates of 180 and 228 months is not likely to reflect official vindictiveness, but it is true that any increase in the period of incarceration before parole would warrant consideration; here, however there has actually been a significant reduction of 4 years, not an increase.

1988, that Kimberlin's presumptive parole date be fixed at 240 months. Instead, the Commission selected 228 months as the release date. That decision was made on November 4, 1988, but nothing in the record in this case suggests that the Commission was aware of Kimberlin's allegations concerning the Vice President until December 12, 1988. On that date, the Commission received an inquiry from Senator Joseph Biden which had been initiated by Kimberlin's letter to the Senate Judiciary Committee, of which Senator Biden is the Chairman. From that point on, of course, the Commission or at least some of its members may be presumed to have known of Kimberlin's allegations concerning the Vice President and that would include the time of the Commission's most recent decision which is now at issue.

The magistrate judge to whom this matter was referred concluded in his Report:

> The only arguable basis for the court to indulge a presumption that the parole commission's decision was based on political considerations is the publicity created by the petitioner. If we were to hold that there is a presumption of vindictiveness under the circumstances of this case a petitioner could always enjoy such a presumption on a second, court-ordered determination by the simple expedient of making public accusations against the parole commission. The court should not find any presumption of vindictiveness, and there is no actual evidence to support the charge.

(Report, p. 8).

The petitioner does not seek to have the Commission's decision set aside on the basis of a charge that its decision was affected by *actual* vindictiveness due to his allegations concerning the Vice President. The only argument is that there was an *appearance of vindictiveness*. This fact is implicitly confirmed by the file which reflects that petitioner at no time has sought to take advantage of available discovery procedures for the purpose of asking the Commissioners under oath subject to the penalties of perjury if they had been contacted by administration officials or others

on behalf of the Vice President relative to the Kimberlin case or had in any way been influenced by Kimberlin's allegations concerning the Vice President when they reached the decision to hold petitioner to a presumptive parole release date of 180 months.

No law has been cited to the court to support the proposition that the magistrate judge was in error when he concluded that to presume vindictiveness under the circumstances of this case would effectively permit any prisoner to create conditions of presumed vindictiveness simply by making startling allegations against the current administration at a time shortly prior to the Commission's review of that prisoner's parole status. The petitioner did cite the decision in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), in support of his general argument on presumption of vindictiveness. That case recognized the appropriateness of a presumption of vindictiveness when a defendant received a greater sentence following his successful appeal of an earlier conviction and the sentencing judge did not rely on any new facts occurring after the original sentence. The decision in *Pearce* was based in no small part on the logical fact that absent changed circumstances there would be no reason except vindictiveness for the defendant to receive a greater sentence following his successful appeal. Noting that to penalize a defendant for exercising his constitutional right to appeal a judgment of guilt would violate the Due Process Clause of the Fourteenth Amendment, the Supreme Court instituted a requirement that the sentencing judge must explain on the record the new facts upon which he relies to impose a greater sentence.

Here there is no logical or implicit basis to presume that the Commission has wrongfully attempted to punish Kimberlin for the allegations that he has made against Vice President Quayle and even the petitioner does not make that assertion. As noted, the petitioner only points to the appearance of vindictiveness and not to actual vindictiveness. In *Pearce* the appearance of vindictiveness flowed directly from

the conduct of the sentencing judge; here the Commission did nothing itself that might create any appearance of vindictiveness. It only decided the petitioner's presumptive parole release date in due course, albeit following the petitioner's and his friend's assertions against an administration official. The timing of the petitioner's assertions cannot be ascribed to the Commission and its timely performance of official functions during a period when those assertions had been made in no way raises any presumption or inference that it acted with wrongful motivations.

■ Moreover, even if the appearance of vindictiveness exists to some, it exists only because someone other than the Commission created that appearance; the parole system cannot be burdened with the duty of controlling allegations that are made by those who appear before it, nor with an automatic reversal if it timely performs its obligations at a time when the administration might arguably have a reason to attempt to influence the Commission. Without an allegation that the Commission was *actually* influenced by such allegations, no lawful basis exists under these circumstances to set the judgment of the Commission aside as to the appropriate presumptive parole release date.

## DID THE COMMISSION VIOLATE DUE PROCESS BY FAILING TO ADOPT THE CLINICAL OVERRIDE JUDGMENTS

■ Section 2.20–06(B) of the Parole Manual provides in part:

Clinical override judgments are of two distinct types:

. . . .

(B) *Better/poorer parole risk.* This judgment concerns whether a parole applicant poses a significantly lower or higher likelihood of any new criminal conduct after release than indicated by the salient factor score. (citation omitted). In such case, a parole applicant may be given a decision below or above the guidelines (as if the parole applicant had a higher or lower salient factor score).

United States Parole Commission, *Parole Commission Rules,* section 2.20–06(B), at 76 (Nov. 12, 1991).

Kimberlin points out that he presented the Commission with three clinical judgments concerning his mental health and future behavior which essentially predicted that petitioner would not engage in any violent behavior in the future. Taken in the context of 18 U.S.C. § 4207(5) which requires the Commission to consider "reports of . . . mental or psychiatric examination of the offender," Kimberlin contends that the Commission "failed to give meaningful consideration to this important mitigating information." (Memorandum of Law in Support of Petition for Writ of Habeas Corpus, p. 18). Petitioner, however, fails to explain the basis for this argument and the court is left to conclude that the Commission is charged with having failed to adequately consider this information because it did not decide to increase petitioner's salient factor score in light of this psychiatric and psychological evidence. Nothing in the record suggests that the Commission's decision to exceed the applicable guideline range was based on a finding that the petitioner represented a threat of future violent behavior if paroled. However, the decision as to how much weight that the Commission should give to these mental evaluations is exactly the type of judgment that Congress has committed by law to the Commission; its decision as to that weight is beyond the review powers of this court. Moreover nothing in this record suggests that the Commission failed to give "meaningful consideration" to this evidence. This objection is not well taken.

## DOES THE COMMISSION'S CONSIDERATION OF MITIGATING CIRCUMSTANCES WARRANT THE ISSUANCE OF A WRIT

■ Kimberlin next contends that the Parole Commission failed to give "meaningful consideration" to the substantial mitigating evidence which was presented on his behalf. Petitioner has presented evidence to the Commission which unquestionably reflects mitigating factors that were not present at the time of his trial and

sentencing. He has also achieved excellent to outstanding performance during his over 10 years imprisonment according to the Parole Commission panel. However it is not disputed that this evidence was presented to the Commission and considered by it; the dispute raised by Kimberlin is that the Commission did not give sufficient weight to this evidence when it decided on petitioner's presumptive parole release date. He thus asks for credit for these factors "to the fullest extent possible." (Petitioner's Memorandum at p. 20).

The record reflects that this information was sufficient to convince the Commission that Kimberlin should receive 20 months credit against his parole release date. Undoubtedly, decisions of that type are always subject to disagreement and perhaps others would award Kimberlin a greater reduction in his period of incarceration before parole; but, that function and judgment, once again, have been placed in the hands of the Parole Commission, not this court. The question of how much weight particular mitigating evidence deserves is an issue most appropriate for the Parole Commission which is charged with determining inmate parole dates on a full time basis. The court cannot find that there is no rational or reasonable basis for the Commission to have selected the credit time of 20 months.

It is perhaps worth noting again that Kimberlin does not contend in this petition that the Commission was influenced in its decision by the fact that Kimberlin alleges that he had years ago sold marijuana to the Vice President. The issue raised is not whether the Commission improperly considered such allegations but whether it gave sufficient weight to the mitigating evidence. That issue is not well taken.

## IS PETITIONER'S SALIENT FACTOR SCORE CORRECT.

■ Finally, petitioner argues that the Parole Commission erroneously computed his salient factor score in 1988 when it awarded only 1 point to petitioner's salient factor score because of 2 prior convictions. The convictions in question are a juvenile conviction for selling controlled substances and a subsequent conviction shortly after his 18th birthday for perjury before the grand jury relative to the involvement of others in the juvenile drug offense.

■ The salient factor score is used as one factor along with an applicant's category score to determine the customary time to be served before release on parole. It considers the number of prior convictions, recent conviction history, and drug use. The higher the salient factor score group, the less time a parole applicant would customarily have to serve before parole. In this case a salient factor score of 7 calls for a customary incarceration period (guideline range) of 64 to 92 months, whereas a score of 8 would provide for a guideline range of 52 to 80 months. Petitioner contends that the juvenile decision on the drug charge and the later perjury conviction are related and therefore should only be counted as one conviction. The perjury conviction resulted when the petitioner testified falsely to the grand jury about the involvement of others in area drug dealing. Although the perjury itself took place only weeks after petitioner pleaded guilty to the drug charge pursuant to a plea agreement which provided for him to testify concerning area drug dealing, the jury conviction for perjury did not occur until over a year later.

The magistrate judge concluded that this issue could not properly be raised now because it was not raised in Kimberlin's earlier petition for a writ of habeas corpus thus constituting an abuse of the writ under 28 U.S.C. § 2244(b). Kimberlin through his lawyers actually took the position himself when he first applied for parole in July of 1988 that the proper salient factor score for his case was 7. In that application he asserted that the two convictions entitled him to only one point, not two. Moreover he did not contest this finding when he first applied to this court for a writ of habeas corpus which was granted in part.

■ Kimberlin argues that there was no reason to raise this issue in the first petition because he had been placed in a Category 8 which did not have a maximum guideline range for incarceration and his

salient factor score therefore "would not have made any meaningful difference." This position is simply not supportable. Had the petitioner been given a salient factor score of 8, rather than 7, the minimum period of incarceration in his guideline range would have been 100 months instead of 120 months; moreover petitioner sought successfully in his first petition to reduce his offense severity category from 8 to 7. Had he raised the salient factor score issue at that time, the court could have considered it and, if valid, have ordered the Commission to reconsider that issue at the time the original writ was issued and a new hearing was granted on the issue of the offense severity category. Under these circumstances it is an abuse of the writ to now ask the court to overturn the Commission's determination of petitioner's salient factor score.[7]

Following this de novo review, the court concludes that the objections to the Report of the magistrate judge are not well taken and that the Petition for a Writ of Habeas Corpus should be denied. Judgment shall therefore be entered dismissing the petition.

IT IS SO ORDERED.

---

**7.** Petitioner's salient factor score was at any rate correctly determined just as his lawyer concluded in Petitioner's Application for Parole. There is nothing in the law, nor applicable regulations and manuals, which suggests that related convictions must be treated as one for parole computation purposes.