Brett C. **KIMBERLIN**, Petitioner–Appellant,

v.

**O.I. WHITE** and **United States Parole Commission**, Respondents–Appellees.

No. 92–6084.

United States Court of Appeals, Sixth Circuit.

Argued June 22, 1993.

Decided Oct. 19, 1993.

See also 805 F.2d 210.

Nathan A. Bicks, Burch, Porter & Johnson, Memphis, TN, Stephen H. Sachs (briefed), Rene L. Todd (argued and briefed), and Melinda Hardy, Wilmer, Cutler & Pickering, Washington, DC, for petitioner-appellant.

Daniel A. Clancy, U.S. Atty., Harriett Miller Halmon, Asst. U.S. Atty., Office of the U.S. Atty., Memphis, TN and Richard K. Preston, II (argued and briefed), U.S. Parole Com'n, Chevy Chase, MD, for respondent-appellee.

Before KENNEDY and NORRIS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

ALAN E. NORRIS, Circuit Judge.

Petitioner, Brett Kimberlin, appeals the district court's dismissal of his second petition for a writ of habeas corpus alleging that respondent, United States Parole Commission ("the Commission"), violated his due process rights by vindictively redetermining his parole release date and failing to show good cause for a substantial upward departure from the parole guidelines. 798 F.Supp. 472. Finding no merit in these arguments, we affirm.

## I.

Kimberlin was convicted as the so-called "Speedway Bomber," who terrorized the city of Speedway, Indiana, by detonating a series of explosives in early September 1978. In the worst incident, Kimberlin placed one of his bombs in a gym bag, and left it in a parking lot outside Speedway High School. Carl Delong was leaving the high school football game with his wife when he attempted to pick up the bag and it exploded. The blast tore off his lower right leg and two fingers, and embedded bomb fragments in his wife's leg. He was hospitalized for six weeks, during which he was forced to undergo nine operations to complete the amputation of his

leg, reattach two fingers, repair damage to his inner ear, and remove bomb fragments from his stomach, chest, and arm. In February 1983, he committed suicide.

After being convicted of the bombings and related offenses, Kimberlin was sentenced to a fifty-year term of imprisonment for manufacturing and possessing a destructive device, and malicious damage by explosives with personal injury in violation of 26 U.S.C. §§ 5861(d) and (f), and 18 U.S.C. §§ 844(f) and (i). He received a concurrent twelve-year sentence for impersonating a federal officer, illegal use of a Department of Defense insignia, and illegal use of the Presidential Seal in violation of 18 U.S.C. §§ 912, 701, and 713, respectively, and a five-year term for receipt of explosives by a convicted felon in violation of 18 U.S.C. § 842(i)(1). Finally, he was given a four-year sentence by the United States District Court for the Southern District of Texas on an earlier, unrelated conviction for conspiracy to distribute marijuana.[1]

Kimberlin's sentences were aggregated by the Bureau of Prisons and, pursuant to 28 C.F.R. § 2.5, were treated by the Commission as a single aggregate sentence of fifty-one years, six months, and nineteen days. He received an initial parole hearing by a two-person panel of the Commission on July 28, 1988.

Under the paroling policy guidelines, *see* 18 U.S.C. § 4203(a)(1); 28 C.F.R. § 2.20 (1992),[2] each parole determination is based upon two factors: an Offense Category and a Salient Factor Score. The Offense Category rates the severity of the inmate's offenses according to an index of federal crimes, although the Commission may use a different category in cases of "especially mitigating or aggravating circumstances." 28 C.F.R. § 2.20(d) (1992). The Salient Factor Score purports to predict whether a prisoner will violate parole based upon facts such as the number of prior convictions, and age and probation status at the time of the offense. *See* 28 C.F.R. § 2.20(e) (1992). An inmate may receive a Salient Factor Score of "Very Good," "Good," "Fair," or "Poor."

Once the Commission selects the appropriate Offense Category and Salient Factor Score, it must then cross-reference these scores on a grid to determine a recommended range of parole release dates. *See Guidelines for Decisionmaking*, 28 C.F.R. § 2.20 (1992).

On June 20, 1988, the Commission gave Kimberlin a prehearing assessment, which noted a Salient Factor Score of 7, and placed him in Offense Category 8, the highest possible Offense Category, because his offense behavior "involved, among other things, the explosion of a bomb resulting in various serious injuries and eventually the death of an individual."

The hearing panel agreed with the prehearing assessment, rating Kimberlin's Offense Category as 8, and giving him a Salient Factor Score of 7. The panel found that they ordinarily would have set his presumptive parole date at 180 months. However, in view of certain mitigating circumstances the panel recommended that his parole date be set at 168 months, *i.e.*, on February 15, 1993. The panel also recommended that a Regional Commissioner consider the case for original jurisdiction, because Kimberlin was serving a sentence of more than forty-five years and because of "the publicity involved in this

1. Kimberlin's convictions have been affirmed on appeal, *United States v. Kimberlin*, 805 F.2d 210 (7th Cir.1986), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987); *United States v. Kimberlin*, 781 F.2d 1247 (7th Cir.1985), *cert. denied*, 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986); *United States v. Kimberlin*, 692 F.2d 760 (7th Cir.1982) (table), *cert. denied*, 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359 (1983); *United States v. Kimberlin*, 673 F.2d 1335 (7th Cir.1981) (table), *cert. denied*, 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 489 (1982); and on subsequent collateral attack, *United States v. Kimber-lin*, 898 F.2d 1262 (7th Cir.), *cert. denied*, 498 U.S. 969, 111 S.Ct. 434, 112 L.Ed.2d 417 (1990). Kimberlin's Rule 35 motions have also been denied, *United States v. Kimberlin*, 776 F.2d 1344 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.1982).

2. These guidelines apply to offenses which were committed prior to the implementation of the United States Sentencing Guidelines on November 1, 1987.

offense." [3]

On August 12, 1988, Regional Commissioner Victor M.F. Reyes designated Kimberlin's case as an original jurisdiction case and referred it to the National Commission for decision. In addition, Commissioner Reyes disagreed with the panel's parole release recommendation of 168 months, and recommended that Kimberlin serve 240 months.

About two months after Reyes' recommendations, a friend of Kimberlin, acting with his approval, informed reporter Nina Totenberg of National Public Radio that Kimberlin claimed to have sold small quantities of marijuana to then-candidate for Vice President Dan Quayle for Quayle's personal use in the early 1970's, when he was attending law school. According to Kimberlin,

> [t]he story then leaked from NPR to other media in Washington. NBC sent a crew to interview me on November 4th. The local newspaper found out about the story and broke it later that day. This caused the press to inundate the prison with requests for interviews. The staff here asked me to give a press conference at 7 pm on the 4th. I agreed and signed the consent forms. However, the Justice Department in Washington cancelled the press conference leaving 40 reporters standing out in front of the prison.

(Letter from Kimberlin to Senator Biden dated Nov. 28, 1988.)

On November 14, 1988, the National Commission issued a notice of its decision in which it rated Kimberlin's Offense Category as 8 "because it involved the manufacture, possession and placement of eight explosive devices, all of which were detonated, causing in one case, very serious injury and finally the death of an individual." That severity rating, along with the Salient Factor Score of 7, was determined by the National Commission to yield a presumptive parole date, after

serving 228 months, which would result in parole on February 15, 1998.

Commission Chairman Benjamin Baer responded to suspicions that the Commission's decision was linked to Kimberlin's statements about Quayle in a December 16, 1988 letter to Senate Judiciary Committee Chairman Joseph Biden. Baer noted that although the Commission did not formally issue its decision in the Kimberlin case until November 14, 1988, all but one of the votes needed to finalize the decision [4] were cast by October 20, 1988—well before Kimberlin's allegations became public on November 4. The final vote was cast on November 4, the same day that the El Reno *Daily Tribune*, a local newspaper, first publicized Kimberlin's allegations. Baer told Senator Biden that the file did not indicate that any of the Commissioners were aware of Kimberlin's accusations against Quayle when they cast their votes.

After the November 14 decision, Kimberlin asked for *en banc* reconsideration by the full National Commission, alleging several grounds of error. On February 7, 1989, the full Commission affirmed the 228–month decision, but abandoned the conclusion that Kimberlin had caused the death of Delong. The final justification for the Category 8 severity rating was that "[a]lthough detonation of explosive devices with serious bodily injury is normally a Category Seven offense, a Category Eight severity rating is justified because of the unusual number of detonations, the total potential danger involved, and the degree of ongoing suffering caused to the victim."

Kimberlin then filed his first suit for habeas corpus relief. The district court remanded the parole determination to the Commission, noting that it had violated 28 C.F.R. § 2.20, Chapter 13, Subchapter (A)(2),[5] by

---

3. 28 C.F.R. § 2.17 provides that a Regional Commissioner may designate certain cases as original jurisdiction cases, including those involving sentences over 45 years and those involving "national or unusual attention because of the nature of the crime, arrest, trial, or prisoner status." In such instances, the case is referred to the National Commission for decision.

4. When a Regional Commissioner refers a case to the National Commission, four National Commissioners must concur in a decision in order for it to become effective. 28 C.F.R. § 2.17(c)(2) (1992).

5. This regulation provides that "[i]f an offense behavior involved multiple separate offenses, the severity level may be increased. *Exception: in cases graded as Category Seven, multiple separate*

relying upon multiple offenses to increase Kimberlin's Offense Category from 7 to 8. The court instructed the Commission that it could increase Kimberlin's Offense Category to 8 only if it showed specific factual reasons for that increase.

On remand, Kimberlin's petition for parole was again initially reviewed by two Commission hearing examiners. The examiners lowered his Offense Category to 7 and retained his Salient Factor Score of "Good." The parole guidelines grid recommends that such a prisoner be released after sixty-four to ninety-two months of incarceration, *Guidelines for Decisionmaking*, 28 C.F.R. § 2.20, but the hearing examiners recommended departing upward to set a parole release date at 180 months.

Once again, the case was designated for original jurisdiction and referred to the National Commission. On April 27, 1990, the National Commission issued a decision which adopted the 180–month recommendation, justifying the upward departure from the guidelines range with the following statement: "After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: You were involved in multiple bombings."

Kimberlin again sought *en banc* reconsideration, but the entire Commission affirmed the previous decision, noting that the reasons for departure above the guidelines "are specific and comply with 28 C.F.R. § 2.20 for decisions outside the guidelines."

Kimberlin then filed this second petition for a writ of habeas corpus. The same magistrate who had previously recommended a remand recommended dismissing this petition. The same district judge who had previously remanded the case to the Commission agreed and dismissed the petition. This appeal followed.

## II.

### A. Presumptive Vindictiveness

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court examined the due process requirements applicable when a convicted criminal defendant is successful in having that conviction set aside on appeal, but is then given a more severe sentence after retrial. The Court held that "[a] trial judge is not constitutionally precluded ... from imposing a [greater] sentence ... in light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Id.* at 723, 89 S.Ct. at 2079. But, while the constitutional requirements of due process do not prevent a judge from imposing a greater sentence, "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725, 89 S.Ct. at 2080.

The Court therefore cautioned that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id.* at 726, 89 S.Ct. at 2081. This prophylactic rule creates, in effect, "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982).

Some circuit courts have applied the *Pearce* presumption in the parole context, *e.g.*, *Weinstein v. United States Parole Comm'n*, 902 F.2d 1451, 1456 (9th Cir.1990); *Marshall v. Lansing*, 839 F.2d 933, 947–48 (3d Cir.1988), and Kimberlin asks this court to do so here. However, we need not reach the general question of whether *Pearce* applies to Commission redeterminations, since the record unquestionably establishes that Kimberlin did not receive a more severe sentence after remand.

Kimberlin argues to the contrary by focusing on the fact that the Commission set his parole date after the district court's remand

---

*offenses are to be taken into account by consideration of a decision above the guidelines rather than by increasing the severity level."* 28 C.F.R.

§ 2.20, Chap. 13, Subchap. (A)(2) (1992) (emphasis added).

at 116 months above the Offense Category 7 minimum (for a total of 180 months in prison), whereas the original parole date had been set at only 108 months above the Offense Category 8 minimum (a total of 228 months in prison). Despite the overall reduction in his sentence, Kimberlin argues that the Commission thereby increased its upward departure from the parole guidelines minimums by eight months, and that these eight months were "presumptively vindictive" under *Pearce*.

This argument fails because it depends upon a classic comparison of "apples and oranges." Kimberlin attempts to show an increase in upward departure by comparing the first calculation of his parole date, which was made from Offense Category 8, with the post-remand calculation, which was made from Offense Category 7. In so doing, he fails to recognize that Category 8 is uniquely different from the lower categories. Offense Category 8 is reserved for only the most serious crimes, and therefore "no upper limits are specified due to the extreme variability of the cases within this category." *Guidelines for Decisionmaking*, n. 1, 28 C.F.R. § 2.20 (1992). Because there are no upper limits for Category 8, there is no such thing as an upward departure from Category 8. *Id.; Madonna v. United States Parole Comm'n*, 900 F.2d 24, 25–26 (3d Cir.1990); *see Hackett v. United States Parole Comm'n*, 851 F.2d 127, 129, 131 (6th Cir.1987). Therefore, Kimberlin cannot characterize the determination of his parole date after remand as increasing any upward departure, since the Commission's first determination did not amount to an upward departure. This leaves Kimberlin no basis to contend that any element of his sentence was increased after remand.[6] This in turn defeats his assertion of presumptive vindictiveness, since, as noted earlier, the presumption only applies when a more severe sentence is imposed after re-

mand. *Wasman v. United States*, 468 U.S. 559, 565, 104 S.Ct. 3217, 3221, 82 L.Ed.2d 424; *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081. The district court emphasized that "[t]he undisputed fact is that the Commission on remand reduced [Kimberlin's] presumptive parole release date by 4 years. Earlier the Commission had decided that [Kimberlin] must serve 228 months before parole; now it finds that he must serve only 180 months. It is difficult to overcome the conclusions that this simple arithmetic demands." Finding no error in the court's arithmetic, we affirm its conclusion that the Commission's determination after remand should not be viewed as presumptively vindictive. *See United States v. Schoenhoff*, 919 F.2d 936, 939 (5th Cir. 1990) ("the first inquiry must be whether the new sentence is actually harsher than that imposed prior to successful appeal").

### B. An Appearance of Political Vindictiveness

◼ As for Kimberlin's allegations about Vice President Quayle supposedly creating an appearance of political vindictiveness in the Commission's decisions, the district court correctly concluded that Kimberlin, not the Commission, created this appearance. He has neither proven nor alleged that the Commission's decisions were actually influenced in any way by his statements about the Vice President—indeed, Kimberlin's counsel did not mention Quayle during oral argument. In the absence of proof or an allegation of actual vindictiveness, no lawful basis exists to set aside the Commission's sentence. *Alabama v. Smith*, 490 U.S. 794, 799–800, 109 S.Ct. 2201, 2204–2205, 104 L.Ed.2d 865 (1989) (where *Pearce* presumption does not apply, burden remains upon defendant to prove actual vindictiveness). Were it otherwise, any prisoner could make public accusations prior to a Commission's decision, and

---

**6.** While Kimberlin cites cases like *Weinstein*, 902 F.2d 1451 (9th Cir.1990); *Kindred v. Spears*, 894 F.2d 1477 (5th Cir.1990); *Marshall*, 839 F.2d 933 (3d Cir.1988); and *Paul v. United States*, 734 F.2d 1064 (5th Cir.1984) in support of his argument that tacking the eight additional months onto a lower Category minimum was presumptively vindictive, none of these cases involved offenses which, like Kimberlin's, were originally

classified as Category 8. As the Commission notes, when it reduced Kimberlin's Offense Category from 8 to 7 on remand, the basis for comparison changed to a grouping of significantly less serious crimes, by comparison to which the factor of multiple bombings might well have warranted the addition of a greater number of months to the lower Category 7 minimum.

then argue that the decision was tainted by an appearance of vindictiveness.

### C. Other Issues

■ In addition to his claims of vindictiveness, Kimberlin has argued that the Commission did not state particular and sufficient reasons, as required by 18 U.S.C. § 4206(c),[7] to justify its upward departure from the recommended maximum of the Offense Category 7 guideline. While the Commission's statement of reasons (the reference to multiple bombings) was brief, we find that it satisfied the particularity required by § 4206(c). *See Shahid v. Crawford,* 599 F.2d 666, 671 (5th Cir.1979).

As for the sufficiency of this justification, the district court correctly held that it did not have authority to review the substantive parole decision of the Commission, *Farkas v. United States,* 744 F.2d 37, 39 (6th Cir.1984), and therefore could only review whether the factors cited by the Commission were so "arbitrary, irrational, unreasonable, irrelevant or capricious" that they failed to constitute good cause. *Hackett,* 851 F.2d at 131 (citing *Maddox v. United States Parole Comm'n,* 821 F.2d 997, 1000 (5th Cir.1987), and H.R.Conf.Rep. No. 94–838, 94th Cong., 2nd Sess. *reprinted in* 1976 U.S.C.C.A.N. 335, 351, 359). There can be no serious doubt that setting off six dynamite charges (some wrapped with lead shot) amidst a residential community constituted good cause for the Commission's upward departure.

### III.

The judgment of the district court is **affirmed.**

---

7. 18 U.S.C. § 4206(c) provides that

The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provid-* *ed,* That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.