**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  08a0005n.06
Filed:  January 2, 2008

**No.  06-6443**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FREDERICK LEE DIETZ,**

    **Petitioner-Appellant,**

**v.**

**UNITED STATES PAROLE COMMISSION,**

    **Respondent-Appellee.**

                         /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE**


**BEFORE:**     **KEITH and CLAY, Circuit Judges; HOOD, District Judge:**[*]

    **CLAY, Circuit Judge:** Petitioner Frederick Lee Dietz appeals from the district court's order of November 2, 2006 denying his petition for writ of habeas corpus filed pursuant to 28 U.S.C.A. § 2241 (West 2006).  Dietz challenges the United States Parole Commission's determination of the length of time remaining in his term of parole.  For the reasons set forth below, we **AFFIRM** the judgment of the court below.


**BACKGROUND**

---

    [*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

**A.     Substantive Facts**

On December 4, 1986, Frederick Lee Dietz was sentenced in the Southern District of Florida to fifteen years imprisonment for conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846 (2000). Shortly thereafter, on December 16, 1986, Dietz was sentenced to serve three years consecutive to his fifteen-year sentence for violating an earlier sentence of probation.[1] Dietz was released on parole on July 9, 1992 and was scheduled to remain under parole supervision until July 9, 2004.

Dietz's criminal activities continued after his release on parole. On August 7, 1992, a parole violation warrant was issued against Dietz for absconding from parole supervision. Dietz was subsequently arrested for conspiracy to possess marijuana in violation of 21 U.S.C. § 846 and sentenced in the Southern District of Texas on September 13, 1993 to 114 months of imprisonment which was later reduced to a sixty-two-month sentence. On September 24, 1994, an amended parole violation warrant was issued that included the conspiracy to possess marijuana charge. The August 7, 1992 parole violation warrant was withdrawn on July 28, 1997.[2] On April 30, 1998, Dietz was released from prison and began a five-year supervised release period running concurrently with his parole obligation from his December 4, 1986 sentence.

---

[1]Dietz had been convicted of using the telephone to facilitate the commission of a felony on April 15, 1983 in the Western District of Texas.

[2]The portion of the warrant applicable to Dietz's claim states: "the following parole action was ordered: Withdraw Warrant dated 8/7/92 and Reinstate to Supervision (inactive due to new sentence)."

Dietz failed to appear for supervision after his release and subsequently pleaded guilty to possession of cocaine in Louisiana state court on October 1, 1998, an offense for which he received a six-month sentence. As a result, Dietz's supervised release in the Southern District of Texas was revoked, and a twenty-seven-month supervised release violation sentence was imposed on December 16, 1998. On February 16, 2000, a parole violation warrant was issued for the period of parole that had commenced on July 9, 1992 as a result of Dietz's conviction in the Southern District of Florida. Dietz attended a parole revocation hearing on March 19, 2001 after which Dietz's parole was revoked.

## B. Procedural History

On May 15, 2001, the United States Parole Commission ("the Commission") issued a notice of action revoking Dietz's parole and ordering the forfeiture of all time spent on parole. On August 31, 2001, the Commission issued a notice of action ordering that its parole violation warrant be executed *nunc pro tunc* October 23, 1998. As a result Dietz was given a new parole date of July 22, 2003. On April 18, 2002, in response to Dietz's administrative appeal, the Commission's National Appeals Board changed Dietz's release date to July 23, 2002 with a period of supervised release to end on October 22, 2010.

Dietz filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, which was denied by the district court on October 8, 2002. Dietz challenged the jurisdiction of the Commission over his case and the Commission's failure to inform him of possible penalties at the revocation hearing. *Dietz v. Sanders*, 100 Fed. Appx. 334 (6th Cir. 2004). We affirmed the district court's denial of the habeas corpus petition on March 31, 2004. *Id.*

No. 06-6443

Dietz filed a second petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the district court for the Middle District of Tennessee on September 21, 2005. On November 2, 2006, the district court dismissed Dietz's petition with prejudice. Dietz timely filed a notice of appeal to this Court on November 10, 2006.

## DISCUSSION

### A.     Preservation of the Issue

Dietz raised the issue of credit for the time he spent in federal custody throughout the administrative appeals process and at the court below, preserving this issue for review. However, the Commission argues that we should not address this issue because it was already raised in a previous habeas proceeding. (Comn's Br. 7.) The Commission also argues in the alternative that Dietz's claims should have been raised during a previous habeas proceeding, and as a result, we should dismiss Dietz's petition as an abuse of the writ. (Comn's Br. 8.)

The Commission contends that 28 U.S.C. § 2244(a) (2000) allows us to decline to reach the merits of Dietz's claims because this Court has rendered a decision on the merits of these claims in the disposition of Dietz's previous habeas petition. Although habeas corpus petitions filed pursuant to § 2241 are not subject to the strict bars on second and successive petitions imposed on 28 U.S.C. § 2255 (2000) habeas petitions, courts may decline to address claims brought repeatedly. 28 U.S.C. § 2244(a) (Judges need not hear challenges to a petitioner's detention "if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, . . ."). However, § 2244(a) applies to claims that have not only been

4

brought by the petitioner, but have actually been heard and decided by the court. *Sanders v. United States*, 373 U.S. 1, 12 (1963) ("[Section] 2244 is addressed only to the problem of successive applications based on grounds previously heard and decided.").

Dietz previously raised the issue of the Commission's refusal to credit him the time he spent on parole in the appeal of his first habeas corpus petition. *Dietz v. Sanders*, 100 Fed. Appx. at 337-38. Dietz claimed that the Commission's regulation regarding the forfeiture of "street time" (the time spent on parole) upon parole revocation was an unreasonable interpretation of the statute governing parole revocation. *Id.* at 337. This claim is distinguishable from Dietz's present claim that the Commission did not apply its procedures correctly in deciding his case. In addition, we declined to reach Dietz's "street time" claim in his previous petition because it had not been raised at the district court. *Id.* at 338. Thus, we cannot decline to decide Dietz's claim on the merits pursuant to 28 U.S.C. § 2244(a) because the issue Dietz currently raises was not actually heard and decided in the denial of his previous habeas corpus petition.

The Commission also contends that Dietz's claim should not be reviewed on the merits because it constitutes an abuse of the writ. A habeas petition may be seen as an abuse of the writ of habeas corpus if the petitioner raises a claim in a subsequent petition that he could have raised in an earlier petition. *McCleskey v. Zant*, 499 U.S. 467, 489 (1991).[3] It is within the discretion of the

---

[3]Although "abuse of the writ" is generally viewed as a pre-AEDPA standard, courts have applied this equitable principle to habeas petitions brought under § 2241 due to the discretion allowed by 28 U.S.C. § 2244(a). *Whab v. U.S.*, 408 F.3d 116, 119 n.2 (2d Cir. 2005) ("While the standards for determining whether a petition 'abuses the writ' under the doctrine of *McCleskey v. Zant* have much in common with those for determining whether a petition is 'second or successive' under §§ 2244 and 2255, the two doctrines are not coterminous. The fact that a petition is not technically 'second or successive,' and subject to the gatekeeping requirements of §§ 2244 and 2255,

court to decline to decide the petition on the merits in these circumstances.  *Id.*  Dietz clearly could have raised the present challenge in his first habeas petition and has given no explanation for his failure to do so.  Therefore, we may exercise our discretion and dismiss Dietz's petition as an abuse of the writ.  Despite our ability to dismiss Dietz's petition on discretionary grounds, we choose to decide this case on the merits.

**B.**     **Standard of Review**

We review *de novo* a district court's denial of a § 2241 habeas corpus petition.  *Rosales-Garcia v. Holland*, 322 F.3d 386, 401 (6th Cir. 2003) (en banc).  "The federal court's scope of review over a decision by the Parole Commission is extremely limited."  *Hackett v. U.S. Parole Com'n*, 851 F.2d 127, 129 (6th Cir. 1987) (per curiam).  Therefore, we apply a limited abuse of discretion standard and will uphold the Commission's decision if there exists a rational basis for the Commission's conclusions.  *Id.* at 129-30 (quoting with approval *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982)).

**C.**     **Analysis**

Dietz bases his habeas corpus petition on his claim that the Commission did not follow its own procedures by refusing to credit the period Dietz served in prison on an unrelated federal sentence towards his successfully completed parole time.[4]  Dietz claims that his sentence should end

---

does not necessarily mean that its filing might not be found abusive under the traditional equitable doctrine.") (internal citations omitted).  The Supreme Court has acknowledged that in habeas cases requiring an exercise of a court's discretion, "the court must be guided by the general principles underlying our habeas corpus jurisprudence."  *Calderon v. Thompson*, 523 U.S. 538, 554 (1998).

[4]Dietz also claims that his sentence is unlawful because the warrant that was lodged against him in September of 1994 was later withdrawn.  Dietz claims that this resulted in his parole "never

6

1,690 days earlier because of the time he spent in federal custody between September 13, 1993 and April 30, 1998. (Pet.'s Br. 6.) A glaring flaw in Dietz's argument is that the Commission's procedures create no enforceable rights. *Caporale v. Gasele*, 940 F.2d 305, 306 (8th Cir. 1991) ("[W]e have no jurisdiction to review departures from internal rules which are 'merely statements of policy, organization, procedure or practice.'" (quoting *Vargas v. United States Parole Comm'n*, 865 F.2d 191, 195 (9th Cir.1988))); *D'Amato v. United States Parole Comm'n* 837 F.2d 72, 76 (2d Cir. 1988) ("[T]he Commission's internal procedures manual does not create a due process right in a parolee." (citing *Lynch v. United States Parole Comm'n*, 768 F.2d 491, 497 (2d Cir.1985))); United States Parole Commission Rules and Procedures Manual 8 (2003), *available at* http://www.usdoj.gov/uspc/rules_procedures/uspcmanual8-15-03final.pdf ("The notes, procedures, and appendices do not confer legal rights and are not intended for reliance by private persons."). As a result, even if the Commission acted contrary to its procedures, as long as its decision had a rational basis, we would be required to deny Dietz's petition. Nevertheless, inasmuch as the Commission's interpretation of its procedures may inform our analysis of whether there was a rational basis for the Commission's decision, we will analyze the relevant procedures along with the statutory and regulatory provisions governing revocation of parole.

---

effectively [being] revoked between September, 1993 and April, 1998 . . ." (Pet.'s Br. 6.) However, the warrant issued on February 16, 2000 was executed, and after a revocation hearing Dietz's parole was actually revoked on May 15, 2001. Thus, Dietz's argument lacks merit.

After providing notice and the opportunity to be heard, the Commission may revoke the parole of a parolee who has been convicted of a crime. 18 U.S.C. § 4214(d) (repealed 1987).[5] Upon revocation of parole, the Commission may determine whether the time served on parole should be credited towards the sentence of the parolee. As set forth in § 4210(b)(2):

> in the case of a parolee who has been convicted of any criminal offense committed subsequent to his release on parole, and such offense is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

18 U.S.C. § 4210(b)(2) (repealed 1987) (emphasis added). This provision calls for the parolee after revocation to serve all or a part of the unexpired portion of the parolee's sentence as determined at the time of parole, not at the time of the conviction that caused the revocation. *See Weeks v. Quinlan*, 838 F.2d 41, 44 (2d Cir. 1988) ("[T]he Parole Commission may revoke the parole of any parolee convicted of a new offense punishable by imprisonment, and may order that no credit be received for time served after the date of release on parole."). Although § 4210(b) makes no

---

[5]The Comprehensive Crime Control Act of 1984, Pub.L. 98-473, Title II, § 218(a)(5), Oct. 12, 1984, 98 Stat. 2027, repealed the statutory provisions granting authority to the United States Parole Commission, 18 U.S.C. §§ 4201-4218, effective November 1, 1987. However, for individuals who committed offenses before November 1, 1987, this repeal was not to take effect until November 1, 1992. This provision of the Comprehensive Crime Control Act has been extended multiple times, and currently the 18 U.S.C. §§ 4201-4218 will continue to apply in this limited form until November 1, 2008. United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L. No. 109-76, 119 Stat. 2035. As a result, the authority of the Commission over persons who committed offenses before November 1, 1987 continues to be governed by 18 U.S.C. §§ 4201-4218.

reference to crediting the amount of time a parolee has been confined for an unrelated conviction, this provision credits the amount of time the parolee has served for the underlying offense for which parole was granted.

The Commission's regulations also make no reference to crediting the time a parolee has served for an unrelated conviction. The Commission's regulations regarding revocation decisions are contained in 28 C.F.R. § 2.52, which provides:

> (c) A parolee whose release is revoked by the Commission will receive credit on service of his sentence for time spent under supervision, except as provided below:
> . . .
>> (2) It is the Commission's interpretation of 18 U.S.C. 4210(b)(2) that, if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence. An actual term of confinement or imprisonment need not have been imposed for such conviction; it suffices that the statute under which the parolee was convicted permits the trial court to impose any term of confinement or imprisonment in any penal facility. . . . However, in no event shall the violator term imposed under this subsection, taken together with the time served before release, exceed the total length of the original sentence.

28 C.F.R. § 2.52(c)(2) (2007). On appeal Dietz does not challenge the validity of this regulation. However, Dietz contends that despite the absence of any reference to convictions unrelated to a parolee's offense in either the statute or the regulations that govern the revocation decisions of the Commission, the Commission's internal guidelines require the Commission to credit the time Dietz served in prison on an unrelated conviction.

The Commission's procedure manual discusses the credit to be given when parole has been revoked due to a conviction. The manual states:

9

> *Credit for Time in Confinement.* Upon revocation, credit is to be given a prisoner towards service of his maximum sentence for every day in federal confinement not previously credited (including confinement on a warrant later withdrawn; and confinement on an improperly executed warrant, whether or not the prisoner was also in state or local custody).

Rules and Procedures Manual § 2.52-01(g). Dietz asserts that this provision entitles him to a credit for his federal confinement. However, this broad reading of the import of § 2.52-01(g) would be inconsistent with the Commission's regulations and the statutory scheme.

As stated above, the Commission's regulations provide that a parolee who is subsequently convicted of a new crime "forfeit[s the] time from the date of such release to the date of execution of the warrant." 28 C.F.R. § 2.52(c)(2). The regulations do not make an exception for the time spent imprisoned pursuant to the new conviction even though they contemplate the possibility that such imprisonment could occur. *Id.* ("An actual term of confinement or imprisonment need not have been imposed for such conviction."). The only federal court that has addressed this issue has concluded that time confined pursuant to an unrelated conviction was not contemplated by § 2.52-01(g). In *Kelly v. Meifee*, 2003 WL 22845717 (S.D.N.Y. 2003), the court stated:

> At first reading, S.S. 2.52-01(g) appears to authorize credit toward the original sentence for all time spent in federal custody, regardless of whether it was pursuant to the execution of a PV ["parole violation"] warrant. This reading, however, would conflict with 28 C.F.R. § 2.52. As noted, 28 C.F.R. § 2.52 mandates that a parolee who has been convicted of a new crime punishable by imprisonment forfeit the time between having been released on parole and the execution of a parole violator warrant for the new crime. Presumably, this forfeiture occurs even when some of that time has been spent in custody. Thus, construing S.S. 2.52-01(g) in a manner consistent with the underlying federal regulation, we read it as requiring credit toward the original sentence for all time spent in federal, state or local custody due to the execution of a PV warrant.

*Kelly*, 2003 WL 22845717, at *11.  We agree with the court in *Kelly* that § 2.52-01(g) can be reasonably construed as only authorizing credit for time spent in custody due to the execution of a parole violation warrant.

## CONCLUSION

Because the Commission did not abuse its discretion by refusing to credit the time Dietz spent in federal custody unrelated to the offense for which he was paroled, we **AFFIRM** the district court's denial of habeas corpus relief.