NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0004n.06
Filed: January 6, 2009

No. 07-5669

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES R. DURHAM, | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| UNITED STATES PAROLE | ) | |
| COMMISSION, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellee.** | ) | |
| _____ | ) | |

Before: MOORE and SUTTON, Circuit Judges, and ALDRICH,[*] District Judge.

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant James R. Durham ("Durham") appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. The crux of Durham's claim is that the United States Parole Commission ("the Commission") erred in calculating the amount of time remaining on his 1983 bank-robbery conviction in the U.S. District Court for the Eastern District of Kentucky. We disagree, and we therefore **AFFIRM** the district court's judgment.

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

## I. BACKGROUND

The tale of Durham's criminal history and his involvement in the federal criminal-justice system, both before and after the enactment of the Sentencing Reform Act, is a lengthy one. Fortunately, the parties essentially do not dispute the facts, and the events of only a short period of time are relevant to Durham's appeal.

In 1983, in the Eastern District of Kentucky, Durham was charged with and convicted of committing an armed bank robbery. Joint Appendix ("J.A.") at 82, 94.[1] On December 2, 1983, Durham was sentenced to twenty years of imprisonment, but his term was later reduced to nineteen years after an appeal. J.A. at 94, 96. Durham spent the remainder of the 1980s bouncing back and forth between federal custody and parole.

On January 22, 1992, Durham was released on parole supervision until the expiration of his bank-robbery sentence on September 22, 2002. J.A. at 101; Resp't Br. at 3. Durham again violated his parole, and on August 23, 1994, the Commission revoked his parole, credited him with time spent on parole, and set a presumptive parole date of November 25, 1996. J.A. at 102; Resp't Br. at 4.

On November 22, 1996, just three days before his presumptive date of parole, Durham escaped from a halfway house. J.A. at 104; Resp't Br. at 4. Durham spent 107 days out of federal custody, returning to federal custody on March 9, 1997. Durham's escape led, eventually, to two new federal convictions, both of which were to run *consecutive* to his old, 1983 bank-robbery

---

[1] In fact, Durham's first encounter with the federal criminal-justice system came even earlier, in 1977, when he was convicted of interstate transportation of motor vehicles and making a false statement in obtaining a firearm. J.A. at 39-40. Durham received an eight-year sentence, and the nineteen-year sentence he received for his 1983 bank robbery conviction was to run concurrently with the sentence for his 1977 offense. J.A. at 40.

conviction. First, on the charge of escape, he received a thirty-three-month sentence in the Eastern District of Kentucky on October 30, 1997. J.A. at 89. Second, on February 24, 1999, Durham received an eight-month sentence in the Southern District of Indiana on a charge of resisting, opposing, impeding, intimidating/interfering with a law enforcement officer. J.A. at 89-90. Durham committed this offense on February 26, 1997, in the period after he had escaped from the halfway house and before he returned to federal custody on March 9, 1997. Durham then spent the entire period of March 9, 1997, to March 2, 2000, in federal custody. That nearly thirty-six-month period was credited toward, and fully served, his sentences of imprisonment for two new federal convictions.

In its filing in the district court in response to Durham's habeas petition, the Commission acknowledged losing track of Durham around the time of his escape, apparently not learning until January 1998 that Durham had returned to federal custody. J.A. at 64. As a result, the Commission held a rescission hearing in June 1998. J.A. at 105. The hearing examiner noted that Durham had escaped three days prior to his presumptive date of parole and that he was currently then serving a thirty-three-month sentence for his escape. J.A. at 106. The examiner recommended "[r]escind[ing] the effective date of [parole of] 11/25/96 to reparole effective 3/12/97, Nunc Pro Tunc, to the federal detainer only [Durham's new escape sentence]."[2] J.A. at 107. The reasoning essentially seemed to be that because Durham escaped before serving the final three days before his presumptive parole date, the first three days of his return to federal custody would count toward that obligation and he

---

[2]As the district court noted, "*Black's Law Dictionary* defines *nunc pro tunc* as '[a] phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done. *Nunc pro tunc* entry is an entry made now of something actually previously done to have effect of former date." J.A. at 47 (Mem. Op. at 11) (quoting *Black's Law Dictionary* 964 (5th ed. 1981)).

would not start receiving credit toward his new federal sentence until his third day back in federal custody, March 12, 1997.

The Commission agreed with the examiner's recommendation and, on June 29, 1998, issued a Notice of Action rescinding Durham's "parole effective date of 11-25-1996" and reparoling him "effective on 03-12-1997 <u>nunc pro tunc</u> to the federal detainer only." J.A. at 108. The 107 days that Durham spent on escape status would not be credited toward any sentence, *id.*, and based on the Commission's decision, the Bureau of Prisons ("BOP") thus extended the expiration of the sentence for Durham's bank-robbery conviction from September 2002 to a new expiration date of January 7, 2003, J.A. at 93; Resp't Br. at 5.

On July 20, 1998, the Commission issued a parole certificate granting Durham parole, *nunc pro tunc*, to March 12, 1997; the certificate stated that his bank-robbery sentence would expire on January 7, 2003. J.A. at 110; Resp't Br. at 5-6. Durham did not sign the certificate until September 4, 1998.[3]

On March 2, 2000, Durham was released from federal custody, having fully served his new federal sentences of imprisonment thanks to the *nunc pro tunc* parole device that permitted him to begin service of his new federal sentences on March 12, 1997. It appears that Durham was arrested again on October 30, 2000, and returned to custody. J.A. 133. On June 26, 2002, the Commission conducted a revocation hearing concerning Durham's parole violations that occurred between March 2000 and October 2000. J.A. at 130-34. The hearing examiner determined that Durham "was

---

[3]At one point in an administrative appeal, Durham denied ever signing the certificate, J.A. at 139, 139-41 ("Appellant refused to sign as per the record indic[at]es and waived the 1997 Parole date") (Aug. 2002 Pro Se Appeal of Notice of Action). On November 8, 2002, the National Appeals Board affirmed the Commission and determined that Durham had in fact signed the Parole Certificate. J.A. at 146.

arrested on 10/30/2000 and has been in custody since that time." J.A. at 133. During a portion of that period in custody—from August 22, 2001, to November 29, 2001—Durham was in custody specifically on a Commission warrant for a parole violation. J.A. at 113, 116; Resp't Br. at 6-7. The hearing examiner recommended revoking Durham's parole and *also* recommended that "[n]one of the time spent on parole shall be credited." J.A. at 133. Although Durham had only been released from federal custody on March 2, 2000, because of the Commission's *nunc pro tunc* Parole Certificate, Durham had technically been "on parole" since March 12, 1997. J.A. at 126 (April 1, 2002, Warrant Application) (stating Durham was "Released" on "March 12, 1997"). Therefore, on July 2, 2002, when the Commission concurred with the examiner's recommendation and issued a decision revoking Durham's parole and finding that "[n]one of the time spent on parole shall be credited," J.A. at 135, the period of uncredited, or forfeited, time extended all the way back to March 12, 1997. *See also* Resp't Br. at 8 (stating that the Commission's decision meant that Durham "forfeit[ed] all of the time spent on parole"). The Commission did credit Durham with the "[t]ime spent in confinement from 09-04-2001 to 11-29-2001 . . . toward service of the maximum sentence." *Id.*

Durham appealed the Commission's action to the National Appeals Board ("NAB"), J.A. at 138-45 (Appeal), which affirmed the Commission's decision. J.A. at 146. It rejected Durham's contention that "you were not paroled on March 12, 1997 because you refused to sign your parole certificate," noting that "[y]ou signed the certificate on September 4, 1998 stating that you fully understood your conditions of parole." *Id.* The NAB also clarified that Durham should receive custody credit for the period between August 22, 2001, and November 29, 2001, when his custody was due to a Commission warrant (the Commission had credited Durham only with the time between

5

September 4, 2001, and November 29, 2001). *Id.*; *see also* J.A. at 135. As a result of the Commission and the NAB's actions, "the BOP calculated the expiration of Durham's [1983 bank robbery] sentence as November 17, 2007." Resp't Br. at 9 (citing J.A. at 85). The new calculation thus extended the expiration date of Durham's 1983 sentence by nearly five years—from January 7, 2003, to November 17, 2007. That period corresponds to the amount of time "on parole" that the Commission declared "not credited," or forfeited, which in Durham's case became, on account of the "nunc pro tunc" parole certificate that he signed in September 1998, the more than five-year period between March 12, 1997, and May 1, 2002, when he was arrested on the warrant for his parole violation (minus the roughly three-month period in late 2001 that the Commission did credit).

On December 30, 2002, Durham was released on parole and signed a parole certificate. The certificate stated an expiration date of November 17, 2007, for the nineteen-year sentence for bank robbery that he received in 1983, and below his signature, Durham wrote that he "[s]igned in protest of date." J.A. at 147.

Durham has continued to circulate in and out of custody, and according to the Respondent's Brief he is next eligible for parole on February 27, 2009, and as of November 26, 2007, the expiration date for Durham's 1983 sentence is January 15, 2012. Resp't Br. at 10; J.A. at 177.

On July 26, 2006, Durham filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. J.A. at 8-15. Durham essentially contested the manner in which the Commission extended his sentence based on the forfeited parole time, arguing that "the Parole Commission acted improperly on July 20, 1998, in entering an order 'nunc pro tunc' restoring Durham to parole during the time when he was serving his federal sentence in federal custody." J.A. at 14 (Pet. at 7). Durham argued the effect was to "improperly extend[] his sentence past his expiration full term date." *Id.*

6

Durham noted that, pursuant to regulation, "[a] grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner." 28 C.F.R. § 2.29(a); J.A. at 14 (Pet. at 7) (citing regulation). Durham therefore argued that "[c]ontrary to the claim of the Parole Commission, [parole] did not become effective until September 4, 1998. At the bottom of the 'nunc pro tunc' order is the following sentence: 'The above-named person was released on the 12th day of March 1997 with a total of 2,127 days remaining to be served.' This computation theory was without foundation." J.A. at 14 (Pet. at 7). Durham therefore requested "a hearing to take evidence to establish when Durham completed his sentence as the records of the Parole Commission are fraught with error." *Id.*

On November 3, 2006, the Commission filed an answer to his petition. J.A. at 62-77. The Commission argued that "[b]ecause [Durham's] parole was revoked [in 2002], in part for conviction of a crime that he committed while on parole which was punishable by a term of imprisonment, he must forfeit all of the time spent on parole following his parole grant on March 12, 1997 until his return to federal custody." J.A. at 70 (Answer at 9). The Commission also noted that Durham's conviction in Indiana state court, for conduct that occurred between March 2000 and October 2000, "was the basis for forfeiture of all of the time [Durham] spent on parole, which extended the expiration date of his sentence from January 7, 2003 to November 17, 2007. Therefore, the Commission properly forfeited [Durham's] street time when it revoked his parole in 2002." J.A. at 73.

On March 28, 2007, the district court denied Durham's petition. J.A. at 37-53. The district court held that Durham waived his challenge to the September 1998 parole certificate because he signed it, J.A. at 48, and continued to consider his petition on the merits but denied relief because

7

it found the use of the *nunc pro tunc* certificate acceptable, citing an unpublished order in a Sixth Circuit case, *Milton-Vales v. LaManna*, 2 F. App'x 480 (6th Cir. 2001); J.A. at 49. The district court held that it "agree[d] with the USPC that its *nunc pro tunc* order should have the same retroactive effect of making [Durham's] parole effective as if entered on the earlier date." J.A. at 53.

Durham's counsel filed a notice of appeal, and Durham, acting pro se, filed a separate letter to the district court. J.A. at 57. After oral argument, Durham and the Commission both filed additional letter briefs at the request of the panel.

We now consider Durham's appeal, as the district court correctly noted that a certificate of appealability is unnecessary to appeal the denial of a petition for habeas corpus filed under § 2241. 28 U.S.C. § 2253(c)(1); *Massey v. Chandler*, No. 97-5389, 1998 WL 69109 (6th Cir. 1998) (unpublished); J.A. at 156-57.

## II. ANALYSIS

Durham's appeal involves essentially a single issue: whether the Commission acted improperly in 1998 in issuing Durham a *nunc pro tunc* certificate of parole that purported to grant him parole as of March 12, 1997. As a preliminary matter, the Commission contends that Durham waived any challenge to the *nunc pro tunc* certificate of parole by signing the certificate, and we address that issue first. We hold that Durham has not waived his challenge to the Commission's actions.

### A. Preservation of the Issue

The district court "determine[d] that [Durham's] signatures [on the September 1998 and December 2002 certificates] constituted knowing and voluntary agreement with the terms of the Certificates." J.A. at 48. In support of this determination, the district court cited our unpublished

8

order in *Phillips v. United States*, No. 95-3823, 1996 WL 185791 (6th Cir. 1996). In *Phillips*, an appeal contesting the denial of a motion filed pursuant to 28 U.S.C. § 2255, we held that a defendant's signature on a plea agreement, *coupled* with the advice of her attorney and the trial judge's careful explanation of the plea agreement and the rights to be waived, sufficed to waive certain rights. *Id.* at *1. The circumstances in which the defendant signed the plea agreement in *Phillips* were manifestly dissimilar to those in which Durham signed the parole certificates, and *Phillips* does not support the district court's holding. The district court further cited two opinions in *civil* cases issued by district courts in our circuit; those cases held that a party waived various rights due to signing a contract. Those cases also obviously do not support the district court's determination.

The Commission dedicates slightly more than a page of its brief to defending the district court's determination and cites only *Phillips* and one additional case, *Nagi v. United States*, 90 F.3d 130 (6th Cir. 1996). Resp't Br. at 11 (citing *Nagi*). In *Nagi*, another appeal of the denial of a § 2255 motion, we held that a defendant waived an objection to being sentenced according to the 1988 Manual of the United States Sentencing Guidelines, instead of the 1987 version. *Id.* at 136. Unlike Durham, the defendant in *Nagi* had the service of counsel and also appeared before a U.S. District Judge for both a plea and a sentencing hearing. Again, we find *Nagi* easily distinguishable from Durham's case.

Based on the record, which consists only of copies of the signed documents, we cannot conclude that Durham waived any challenge to the Commission's actions and calculation of his sentence. The Supreme Court has long held that "waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and that

"[p]resuming waiver from a silent record is impermissible," *Carnley v. Cochran*, 369 U.S. 506, 516 (1962). The Commission has not advanced sufficient evidence to support the conclusion that Durham's signature on the parole certificates amounted to voluntarily, knowingly, and intelligently relinquishing his right to challenge the effect those certificates would have on calculating his sentence.

**B. Whether The Commission's *Nunc Pro Tunc* Parole Certificate Was Improper**

**1. Legal Standards**

"We review de novo a district court's denial of a petition for the writ of habeas corpus filed under 28 U.S.C. § 2241." *Rosales-Garcia v. Holland*, 322 F.3d 386, 400-01 (6th Cir. 2003) (en banc); *see also Dietz v. U.S. Parole Comm'n*, 260 F. App'x 763, 766 (6th Cir. 2008).

The proper standard of review for evaluating the Commission's actions in this case is a murkier question, but we conclude that we should review Durham's claim de novo. In *Hackett v. U.S. Parole Comm'n*, 851 F.2d 127, 129-30 (6th Cir. 1987), we stated that our "scope of review over a decision by the Parole Commission is extremely limited" and quoted approvingly from a Seventh Circuit decision that "applied a limited 'abuse of discretion' standard when reviewing decisions of the Parole Commission." In *Hackett*, however, the petitioner's claim was "that the Commission improperly set the release date outside the range established under the recommended parole guidelines and that the Commission erred by relying on evidence which was not produced at trial and was specifically rejected by the sentencing judge." *Id.* at 128. Durham's claim is clearly very different. His claim is that the Commission acted improperly and in violation of a federal regulation by issuing a *nunc pro tunc* parole certificate and accordingly treating Durham's date of parole as March 12, 1997, and that doing so increased the amount of time forfeited and extended the

10

expiration date of Durham's sentence. Durham's claim essentially raises a question of law—whether the Commission's actions complied with relevant federal regulations—and in similar circumstances our sister circuits have applied a de novo standard of review. *See Hutchings v. U.S. Parole Comm'n*, 201 F.3d 1006, 1008-09 (8th Cir. 2000) ("Whether the Commission had jurisdiction to revoke Hutchings' parole and whether the Commission's proceedings violated Hutchings' due process rights are questions of law, and we therefore review de novo."); *Wallace v. Christensen*, 802 F.2d 1539, 1551, 1552 n.8 (9th Cir. 1986) (en banc) (stating that "[a] claim that the Commission has acted outside its statutory limits typically involves an issue of statutory construction which we review de novo" and that "[t]he Commission, like other agencies, is thus bound by its own regulations so long as they remain in force"). In addition, our unpublished order in *Milton-Vales* supports reviewing Durham's claim de novo. In *Milton-Vales*, the petitioner "alleged that the Parole Commission had miscalculated the length of his federal parole-violator sentence and the amount of time that he had served before being paroled." *Milton-Vales*, 2 F. App'x at 480. We began our analysis by referring to "[a] *de novo* review of the record." *Id.* In light of all these decisions, we conclude that a de novo standard of review applies to Durham's claim.

## 2. Analysis

Although Durham's briefing is not a model of clarity and seems to espouse a number of theories for relief, we understand the crux of Durham's complaint to be as follows. Federal regulations provide that parole is not operative until the delivery to the prisoner of a certificate of parole. 28 C.F.R. § 2.29(a). In Durham's case, that delivery occurred on September 4, 1998. The certificate, however, purported to grant parole *nunc pro tunc* with an effective date of March 12, 1997, approximately eighteen months earlier. The Commission thus treated Durham as being "on

11

parole" from March 12, 1997, even though Durham was in fact in federal custody serving new federal sentences for escape and resisting a law enforcement officer, with his period in custody beginning on March 9, 1997, and extending to March 2, 2000.

In its letter brief, the Commission states that employing the *nunc pro tunc* parole certificate was necessary for Durham to finish the service of his new federal sentences as soon as possible. The Commission explains that, had the Commission not used the *nunc pro tunc* parole certificate, Durham "would have spent additional time in prison" because "[i]f [Durham] had not been paroled until September 4, 1998, [the date of delivery of the parole certificate,] he could not have begun serving his escape sentence until this date." Comm'n Letter Br. at 2. The Commission states that "[a]s a result, Durham would not have been paroled until August 24, 2001, eighteen months later than his actual release date" of March 2, 2000.

Durham accepts this point that the *nunc pro tunc* parole certificate permitted him to expedite service of his new federal sentences and enjoy an earlier release date, stating in his letter brief that "he would have been in prison an additional 17 months" but for the use of the *nunc pro tunc* certificate. Pet'r Letter Br. at 2. But Durham's letter brief then asserts that we should essentially view the seventeen-month period following his actual release from prison in March 2000 as time spent fulfilling what he claims was the remainder of his new federal sentences. *Id.* at 2-3. On the basis of that legal fiction, Durham then offers an alternative accounting for the following various periods of time that he spent in and out of custody.

In consideration of the fact that both the Commission and Durham understand that the Commission's use of the *nunc pro tunc* parole certificate afforded Durham the substantial benefit of expediting the service of his new federal sentences—as well as essentially providing him the

12

opportunity simultaneously to serve time on parole toward his 1983 bank-robbery conviction—we decline to find error in the Commission's actions in this case. Furthermore, we are unable to accept Durham's argument that we must view the seventeen months following his release in March 2000 as time spent fulfilling his new federal convictions "because of the mistake of the Parole Commission" and his further alternative accounting of his time in and out of custody. Pet'r Letter Br. at 3. Although Durham did not waive *any* challenge to the Commission's calculation of his sentence by agreeing to and signing the *nunc pro tunc* parole certificate, this challenge is meritless.

Accordingly, we **AFFIRM** the district court's judgment denying Durham's petition for a writ of habeas corpus.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment denying Durham's petition for a writ of habeas corpus.