In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2045

JOSE MATAMOROS,

*Petitioner-Appellant,*

*v.*

GREGORY GRAMS, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-00704-CNC—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED OCTOBER 30, 2012—DECIDED JANUARY 29, 2013

Before BAUER, FLAUM, and WOOD, *Circuit Judges*.

BAUER, *Circuit Judge*.    In 1983, Jose Matamoros was sentenced to ten years in prison, with a three-year special parole term to follow. When the ordinary parole term for his prison sentence finally expired in 2005, Matamoros' parole officer wrote him a letter and issued a Notice of Discharge which explained that Matamoros' parole term had expired and that he was no longer subject to supervision by the U.S. Parole Com-

mission. Neither the Commission nor Matamoros' parole officer noticed that Matamoros still had the special parole term left to serve until roughly one month later, when the Commission issued a Certificate of Special Parole, nunc pro tunc. About six hours after the Commission issued the Certificate and a month after Matamoros received the Notice of Discharge, Matamoros participated in an armed robbery, for which he was later sentenced to jail. (Matamoros remains incarcerated in a Wisconsin state prison as a result of the conviction and sentence.) Because Matamoros was subject to the special parole term when he committed the robbery, the Commission issued a warrant for Matamoros' arrest for violating the conditions of his special parole term release. The arrest warrant was later lodged as a detainer, and that detainer remains in effect today.

Matamoros petitioned for a writ of habeas corpus in the U.S. District Court for the Eastern District of Wisconsin, challenging the legality of the special parole term imposition, the subsequent lodging of the detainer, and the Commission's delayed dispositional review of the detainer. Matamoros also argued that the government should be estopped from enforcing the detainer because he was mistakenly told he was no longer subject to the Commission's supervision. The district court rejected all of Matamoros' arguments, and he appealed. We agree with the district court's conclusions and affirm.

## I. BACKGROUND

A brief description of ordinary parole and special parole is necessary to understand the issues in this

case. Before the Sentencing Reform Act of 1984 abolished parole in federal cases, ordinary parole was the supervised release of a prisoner before he had completed his entire prison sentence. *See United States v. Fazzini*, 414 F.3d 695, 699 (7th Cir. 2005). The "parolee" was released from federal custody for good behavior and served the remainder of his prescribed prison sentence while out on parole, provided he abided by all the conditions of his release. *See* 18 U.S.C. §§ 4161 *et seq.* (1982) (repealed by the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 2027, but remaining in effect for those sentenced prior to the Act). Special parole, on the other hand, was a "short-lived instrument of federal justice" that was statutorily required to be included in the sentence for certain defendants; it has since been replaced with "supervised release." *Evans v. U.S. Parole Comm'n*, 78 F.3d 262, 264 (7th Cir. 1996); *see* 28 C.F.R. § 2.57. Courts have described special parole as being entirely different from and in addition to ordinary parole, as it *follows* the completion of ordinary parole and subjects the defendant to reincarceration during the entire special parole term if its conditions are violated. *See United States v. Bridges*, 760 F.2d 151, 155 (7th Cir. 1985).

Keeping that in mind, the foundation of this case can be traced to 1982 when Matamoros first entered the federal criminal justice system. That year, he was indicted and convicted on two counts of criminal drug activity involving cocaine hydrochloride for conduct violating 21 U.S.C. §§ 841(a) and 846, and 18 U.S.C. § 2 (1982). On January 12, 1983, the U.S. District Court for

the Eastern District of Louisiana sentenced Matamoros to two consecutive five-year terms of imprisonment, followed by a three-year term of "special parole."

What followed was a long, complicated series of events; most of which have no direct bearing on the issues before us today.[1] In short, a pattern of events would be repeated in which Matamoros would be released from prison on ordinary parole, violate the conditions of his parole, and then be taken back into custody and incarcerated. Violations included being a felon in possession of a firearm and a dangerous weapon, as well as possession of illegal substances. This cycle repeated numerous times until August 3, 2005, when Matamoros' ordinary parole term from the two consecutive five-year prison terms finally expired—over twenty years later.

On August 3, 2005, Matamoros' parole officer, Daniel Savasta, prepared a letter to Matamoros titled "Parole Termination." In the letter, Savasta said that Matamoros' federal parole supervision term expired on August 3, 2005. He also asked Matamoros to complete an exit survey and told him, "Congratulations and good luck!" Savasta similarly prepared a document titled "Notice of Discharge," which he signed and dated on August 4, 2005. In the Notice of Discharge he wrote, "Inasmuch as you have completed the terms and conditions of your

---

[1] The district court opinion fully explains the timeline between January 12, 1983, and August 3, 2005. *See Matamoros v. Grams*, No. 08-C-0704, 2012 U.S. Dist. LEXIS 45916, at *2-6 (E.D. Wis. Mar. 31, 2012).

parole on the date shown above, you are hereby discharged from supervision of this office."[2]

In accordance with Matamoros' original sentence on January 12, 1983, Matamoros was to be placed on special parole for three years following his ten-year prison term. This additional requirement, however, was somehow missed by both Savasta and the Commission. At the time, no one communicated to Matamoros that he was still subject to special parole even though his ordinary parole term had expired. Savasta explained his oversight in an affidavit to the district court:

> The special parole term had escaped my attention (and that of the Commission) earlier. I believe this is because, while special parole is clearly referenced in the 1983 judgment of conviction in CR82-356-I, it is not mentioned in the more recent documents in Matamoros's file. I relied upon these more recent documents when drafting my letter of August 3, 2005.

The Commission became aware of the mistake a short time later. On September 9, 2005, the Commission issued a document titled "Certificate of Special Parole, nunc pro tunc."[3] The relevant portion of the document provides:

---

[2] The words in the copy of the letter provided to us have been blacked out. Accordingly, the exact words used here are taken from the district court opinion.

[3] Nunc pro tunc is a Latin phrase meaning "now for then," and its use allows a court to treat something done now as having

(continued...)

It having been made to appear to the United States Parole Commission that Matamoros, Jose, Register No. 17373-034, is subject to a special parole term commencing August 4, 2005, in accordance with the Drug Abuse Prevention and Control Act, 21 U.S.C. § 801, et. seq. with a total of 3 years to be served. Upon release, the above-named person is to remain under the jurisdiction of the United States Parole Commission and will be under the conditions set forth on the attached Conditions of Release form until midnight August 3, 2008, and that said releasee is to remain within the limits of the Eastern District of Wisconsin.

A notation at the bottom states, "Queued: 09-09-2005 14:34:38 USPO-Eastern District of Wisconsin | BOP-Oklahoma FTC." This notation indicates the date and time of issuance, and the probation office and bureau of prisons involved.

The record indicates that Savasta placed a call to the Commission at 2:37 p.m., almost immediately after the Certificate of Special Parole was issued. A case analyst at the Commission, Lynne E. Jenkins, wrote the following report:

> USPO called and left message inquiring if there is a SPT in this case.

---

[3] (...continued)
an earlier effective date. *Siddiqui v. Holder*, 670 F.3d 736, 749 n.5 (7th Cir. 2012).

I reviewed file and determined there was a 3 yr SPT for this case. It does appear to be associated with the 841 conviction, not the 846, conspiracy.

Prepared and faxed SPT cert, began 8-4-05, ends 8-3-08.

Although no information in the record supports his assertion, Savasta stated in his affidavit that he also called Matamoros and informed him about the additional special parole term:

> [W]hile my log of contacts with Matamoros does not reflect this, I distinctly recall speaking with Matamoros by telephone (at a cellular telephone number provided on his business card) *during business hours on September 9, 2005* to inform him of the special parole term and to request that he come in to the office. He acknowledged understanding that he was subject to a special parole term.

Matamoros contends he never received a phone call from Savasta informing him of the special parole term.

The importance of the special parole term comes to light as a result of the events that transpired later that night. At approximately 9:00 p.m. on September 9, 2005, Matamoros participated in an armed robbery. Officers of the Milwaukee Police Department responding to the crime arrested Matamoros on the scene. Matamoros was in possession of the victims' jewelry and cash and, at some point, confessed his involvement to the police.

The Commission became aware of Matamoros' September 9, 2005 conduct, and on September 19, 2005, issued a

warrant for Matamoros' arrest for violating the condi-
tions of his special parole term release.[4]

On April 24, 2006, a jury convicted Matamoros on four
separate felony counts for his conduct on September 9,
2005: armed robbery, false imprisonment, and two
counts of substantial battery-intended bodily harm.
Matamoros received a fifteen-year prison sentence, to
be followed by five years of extended supervision. He
was sent to the Columbia Correctional Institution
in Portage, Wisconsin, where he remains today.

On October 5, 2006, the U.S. Marshal for the Eastern
District of Wisconsin issued a detainer based on the
federal parole violation warrant issued on September 19,
2005. The purpose of the detainer is to make sure the
U.S. Marshal is notified when Matamoros is discharged
from his state prison sentence so he can be immediately
taken into federal custody for a revocation of parole
hearing. *See Moody v. Daggett*, 429 U.S. 78, 81 n.2
(1976). Matamoros received a copy of the detainer on
October 10, 2006.

Both parties agree that the detainer affects Matamoros'
incarceration in a number of ways. Matamoros con-
tends the detainer negatively affects him because he

---

[4] As noted in the district court opinion, the record does not
contain the conditions attached to Matamoros' special parole
term. We presume, and the parties do not dispute, that
they included a provision that Matamoros abide by all
local, state, and federal laws and regulations. *See* 18 U.S.C.
§ 4209(a) (1982).

(1) cannot be moved to a lower security-level facility; (2) is excluded from prison programming; (3) is viewed as a "more dangerous inmate"; and (4) received a harsher sentence in his state case. Although, the government asserts that much of what Matamoros complains of is the result of his "lengthy and violent criminal history."

Pursuant to the statutes governing Matamoros' parole in effect at the time of his crime and sentence, the Commission was to review the detainer within 180 days of receiving notice of Matamoros' incarceration placement. *See* 18 U.S.C. §§ 4213-14 (1982). The purpose of this "dispositional review" is to provide the Commission with an opportunity to determine if the detainer should stand or be withdrawn. *See* § 4214(b)(2).

On May 18, 2009, three years after the date on which the dispositional review was to occur, the Commission released its decision. Despite Matamoros' contention that the detainer should be withdrawn, the Commission concluded that the detainer should stand and informed Matamoros that the decision was not appealable.

Matamoros initiated this habeas action in an attempt to have the detainer removed.[5]  In the district court, he

---

[5] The Commission had not yet conducted a dispositional review of the detainer at the time Matamoros filed his Petition for Writ of Habeas Corpus on August 20, 2008. Accordingly, one of Matamoros' contentions was that the Commission was in error for having failed to either conduct a dispositional review of the detainer or hold a final hearing regarding the

(continued...)

contended that the reinstatement of parole, the issuance of the parole violation warrant, and the lodging of the detainer were illegal. He also argued that the Commission's delay in conducting a dispositional review of the detainer violated the governing statutes, which entitled him to relief. The district court rejected all of these arguments. As a last-ditch effort, Matamoros argued that the Commission should be estopped from acting on the warrant because of Savasta's issuance of the Notice of Discharge and his alleged lack of actual notice of the special parole term before he committed the crimes on September 9, 2005. The district court dismissed this contention as well, concluding that Matamoros could not satisfy all of the elements for estoppel—namely, that he was ignorant of the fact that he still had a special parole term to serve after the ordinary parole discharge on August 3, 2005, and that he reasonably relied on Savasta's Notice of Discharge when he engaged in illegal conduct on September 9, 2005.

Matamoros appealed, and his petition is now before us.

## II. DISCUSSION

A district court's denial of a habeas petition is reviewed *de novo* and its findings of fact for clear error.

---

[5] (...continued)
parole violation. On May 18, 2009, the Commission issued the decision for its dispositional review, so whether the Commission was in error for having failed to conduct a dispositional review at all is no longer an issue in this case.

*Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). Matamoros' appeal as to why the detainer should be lifted is based on two contentions: first, that the Commission violated his due process rights, and second, that we should apply the doctrine of equitable estoppel and prohibit the Commission from enforcing the detainer. We address each contention in turn.

## A. Due Process Rights

The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law. U.S. CONST. amends. V, XIV. "Due process requires government to follow reasonable procedures for minimizing mistaken deprivations of liberty. In determining what is reasonable 'the court must consider the weight of the interest at stake, the risk of error, and the costs of additional process.'" *Atkins v. City of Chi.*, 631 F.3d 823, 827 (7th Cir. 2011) (quoting *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006)). Matamoros contends his due process rights were violated because (1) he did not receive adequate notice of the special parole term, and (2) the Commission failed to conduct a dispositional review of the detainer within 180 days, as required by 18 U.S.C. § 4214(b)(1) (1982).

### 1. Adequate Notice

The purpose of notice under the Due Process Clause is to allow an interested party to challenge the deprivation

of a protected liberty interest before it occurs. *See Gates v. City of Chi.*, 623 F.3d 389, 402 (7th Cir. 2010). The case law involving what type of notice is required under the Due Process Clause is numerous, and its applicability wide-spread. *See, e.g.*, *Westefer v. Neil*, 682 F.3d 679, 684 (7th Cir. 2012) (an inmate requires "some notice" of the reasons for a particular prison placement before an administrative review (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)); *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011) (federal inmates are entitled to written notice at least twenty-four hours before a hearing involving revocation of good time credits is held); *Garcia v. Meza*, 235 F.3d 287, 290 (7th Cir. 2000) ("Written notice of forfeiture by certified mail to the claimant's residence generally satisfies due process even if the claimant does not receive actual notice."). Our sole interest here is on whether Matamoros was adequately notified of the special parole term before the Commission issued the arrest warrant and subsequently lodged a detainer against him.[6] We must look to the particular facts of the

---

[6] If the district court had made a factual determination that the call between Savasta and Matamoros took place on September 15, 2005, we would have no problem affirming the district court's rejection of Matamoros' argument on that basis alone. The district court, however, did not conduct an evidentiary hearing, so we are unable to rely on Savasta's undocumented call. *See United States v. Rutledge*, 648 F.3d 555, 560 (7th Cir. 2011) (explaining why we defer to a trial court's credibility determinations and how we

(continued...)

case to answer this question. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

From the outset, a sentencing judge is required to explain to a defendant the conditions of his criminal sentence. *See United States v. Curby*, 595 F.3d 794, 796 (7th Cir. 2010) ("The district court 'must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007))). A failure to do so may be grounds for invalidation of the sentence or conviction. *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("A judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight."). Matamoros has not asserted that he was not informed of the special parole term at his original sentencing in January 1983, and thus, we assume that he was in fact so notified.

Moreover, Matamoros had additional notice of the special parole term from many of the documents associated with his case. Documents that explicitly refer to a special parole term (or SPT) include the original judgment of conviction from January 12, 1983; the supplements to the July 13, 1990 warrant application, dated August 23, 1990, and June 10, 1991; the warrant application dated April 13, 2000; and the actual April 13, 2000 arrest warrant. A plain reading of the documents

---

[6] (...continued)

cannot defer to anything if the trial court has not made a decision).

demonstrates that Matamoros had a special parole term left to serve after being released from ordinary parole. If Matamoros turned a blind eye towards the documents, that is insufficient to negate the adequate notice we believe they provided.

Our conclusion that Matamoros received adequate notice of the special parole term is further bolstered by the statutes governing Matamoros' drug convictions. Matamoros was convicted under 21 U.S.C. § 841(a)(1) (1982). The statute required a sentence including a term of imprisonment, a fine, or both. § 841(b)(1)(A). Section 841(b)(1)(A) also stated, "Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole of at least 3 years in addition to such term of imprisonment . . . ." *Id.* The sentencing judge in 1983 sentenced Matamoros to prison, so Matamoros was required to also serve a special parole term. The use of the word "shall" prohibited any flexibility regarding whether to impose a special parole term beginning after a term of imprisonment.

Nonetheless, § 841(c) is the provision most damaging to Matamoros' contention that he "had every reason to believe that he was no longer a parolee subject to supervision by the Commission" when he committed the armed robbery on September 9, 2005: "A special parole term provided for in this section . . . of this title shall be *in addition to, and not in lieu of*, any other parole provided for by law." § 841(c) (emphasis added). The statute is clear; Matamoros was required to serve a special parole term, regardless of how many ordinary parole

terms he served or when he was finally discharged from his original prison sentence. Such a situation does not require our intervention. *See United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied."); *cf. Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012) (describing why a vague statute may be challenged on the ground that it violates due process by failing to "provide definite notice").

Insofar as Matamoros contends that adequate notice required him to sign or review a "Special Parole Term Certificate" before its imposition, he does not direct us to any case, statute, or regulation that requires this. The sole authority Matamoros relies on, *Chilcote v. Bureau of Prisons*, 874 F. Supp. 229 (N.D. Ind. 1994), does not support his contention. The case involved a parolee who was paroled on special parole for the second time. *Id.* at 230. Instead of being paroled pursuant to a "Certificate of Special Parole," the petitioner received a "Certificate of Parole." *Id.* at 231. After the petitioner was taken into custody on a subsequent (special) parole violation warrant, he contended, among other things, that his due process rights were violated because he was not issued a "Certificate of Special Parole" pursuant to 18 U.S.C. § 4209(b) (1982) that set forth the possible ramifications if his special parole term was revoked. *Id.* Section 4209(b) provides:

> The conditions of parole should be sufficiently specific to serve as a guide to supervision and conduct, and

> upon release on parole the parolee shall be given a certificate setting forth the conditions of his parole. An effort shall be made to make certain that the parolee understands the conditions of his parole.

The district court said that § 4209(b) only requires a parolee to be given a certificate indicating the conditions of parole, not the ramifications of violating parole. *Chilcote*, 874 F. Supp. at 231. Accordingly, because the certificate the petitioner received contained the conditions of his special parole term, the petitioner was properly notified of the conditions, regardless of how the certificate was titled. *Id.* The case did not address Matamoros' contention that adequate notice required him to sign or review a certificate.

The Commission in this case issued the "Certificate of Special Parole, nunc pro tunc" before Matamoros violated its terms. Notwithstanding that *Chilcote* is not binding on this Court, we do not read *Chilcote* or § 4209(b) to mean that a parolee automatically lacks sufficient notice, for due process purposes, if he does not sign or review a given special parole certificate before it takes effect. In fact, the Sixth Circuit in *Durham v. U.S. Parole Commission*, 306 Fed. Appx. 225 (6th Cir. 2009) (unpublished), declined to find error in a nunc pro tunc certificate that was meant to benefit the petitioner, even though it was not delivered until approximately seventeen months after its effective date, because it expedited service and allowed the petitioner to serve his new federal sentence as soon as possible. *Id.* at 231-32. That reasoning is applicable here.

Had Matamoros stayed out of trouble, the nunc pro tunc certificate would have allowed him to be released from special parole at least one month earlier than if his special parole term began upon its delivery and Matamoros' signature, which he contends was necessary. Because the special parole term was required to begin on August 4, 2005—immediately after his ordinary parole ended, *see* 21 U.S.C. § 841(b)-(c) (1982); 28 C.F.R. § 2.57(a)-(b)—Matamoros would be raising the exact opposite challenge if the special parole term was supposed to end on August 4, 2008, and he violated its terms on September 1, 2008. (For example, he would argue that the special parole term should have been in full effect on August 4, 2005, and terminated on August 4, 2008.) It is undeniable that the Commission made an initial mistake, but it could not have predicted Matamoros would commit a forcible felony later that night on September 9, 2005. For all intents and purposes, it was acting in accordance with 21 U.S.C. § 841, and everyone's best interests, by rectifying Savasta's oversight in the most effective way possible: issuing a nunc pro tunc certificate. We do not believe that such an act is the basis for a due process violation.

Because Matamoros had adequate notice of his special parole term, we find no errors in the Commission's imposition of the special parole term, filing of the violator warrant, or subsequent lodging of the detainer.

### 2. Delayed Dispositional Review

Matamoros also contends his due process rights were violated because the Commission did not conduct a

dispositional review within 180 days of the lodging of the detainer, pursuant to 18 U.S.C. § 4214(b)(1) (1982). Section 4214(b)(1) provides in part,

> Such detainer shall be reviewed by the Commission within one hundred and eighty days of notification to the Commission of placement. The parolee shall receive notice of the pending review, have an opportunity to submit a written application containing information relative to the disposition of the detainer, and, unless waived, shall have counsel . . . to assist him in the preparation of such application.

The statute, however, provides no remedy for delayed action by the Commission, and we do not view a delayed dispositional review as a constitutional violation in and of itself (even if the delay is three years, as in this case). Matamoros must show that he was somehow prejudiced by the delay. *See United States v. Williams*, 787 F.2d 1182, 1184 (7th Cir. 1986) ("Absent some showing that delay of the parole procedures actually caused the defendant some particular prejudice, the Supreme Court held the Constitution did not require immediate hearing." (citing *Moody*, 429 U.S. at 86-89)). But we are hard-pressed to find anything in his brief concerning how the *delayed review* affected him, rather than how the detainer *currently* affects him. Like the district court, we glean from the record no prejudice resulting from the delay that would justify invalidation of the warrant and detainer.

Finally, to the extent Matamoros contends that he has no avenue to challenge the detainer until the Commis-

sion holds a revocation hearing when he is released from state custody in 2020, the Supreme Court has held that this alone does not implicate any constitutional concerns. *See Moody*, 429 U.S. at 89 ("The Commission . . . has no constitutional duty to provide petitioner an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant."). The Commission is not obligated to do anything regarding the detainer until Matamoros is released from state custody and retaken into federal custody; at that time, a full revocation hearing should take place.

### B. Doctrine of Equitable Estoppel

Matamoros' last argument is that the Commission should be equitably estopped from enforcing the detainer. The doctrine of equitable estoppel is based on the principle of fairness and is used to prevent a party from being harmed as a result of actions taken in reasonable reliance of another's assertions. *See Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 394 (7th Cir. 2000); Fred Ansell, *Unauthorized Conduct of Government Agents: A Restrictive Rule of Equitable Estoppel Against the Government*, 53 U. CHI. L. REV. 1026, 1026-27 (1986). Although often phrased differently, a petitioner must satisfy four elements to demonstrate why equitable estoppel should be applied against a party: (1) the party to be estopped knows the facts; (2) that party intended for his conduct to be acted upon or acted in such a manner that the party asserting estoppel had a right to believe he intended as such; (3) the party asserting estoppel was ignorant of the

facts; and (4) the party asserting estoppel reasonably relied on the other's conduct to his substantial injury. *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir. 1982) (quoting *TRW, Inc. v. Federal Trade Comm'n*, 647 F.2d 942, 950-51 (9th Cir. 1981)). We have also stated that the party advancing an argument involving estoppel against the government must additionally demonstrate some "affirmative misconduct." *Solis-Chavez v. Holder*, 662 F.3d 462, 471-72 (7th Cir. 2011).

As an initial matter, both parties acknowledge that we have not yet evaluated whether equitable estoppel may be applied in the parole context, and "[i]t is an open question whether equitable estoppel is [even] available against the government." *Id.* at 471 (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422-23 (1990)). We previously described the current state of affairs in an immigration appeal: "The Supreme Court has *never* affirmed a finding of estoppel against the government. And that is not for lack of review. The Court, in fact, has 'reversed every finding of estoppel that [it has] reviewed.'" *Gutierrez v. Gonzales*, 458 F.3d 688, 691 (7th Cir. 2006) (quoting *Office of Pers. Mgmt.*, 496 U.S. at 422). But either way, this is not the case to decide whether equitable estoppel is available against the government because the record is devoid of any affirmative misconduct on the part of the Commission or Parole Officer Savasta.

Faced with similar circumstances, the Fifth Circuit said that "[a] notice of discharge issued by mistake does not estop the [Commission] from acting on a violator's

warrant absent a showing of affirmative misconduct by the government and a showing that the parolee was prejudiced." *Ward v. U.S. Parole Comm'n*, 233 Fed. Appx. 360, 361 (5th Cir. 2007) (unpublished). Affirmative misconduct requires an affirmative act to misrepresent or mislead; mere negligence is not enough. *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000).

Here, the Notice of Discharge incorrectly stated that Matamoros was no longer subject to the Commission's supervision. Matamoros, however, is unable to demonstrate that the notice and letter, although the product of affirmative *acts*—to be distinguished from a failure to discharge an affirmative obligation, which never amounts to affirmative misconduct, *see Lewis v. Washington*, 300 F.3d 829, 834-35 (7th Cir. 2002); *Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1138 n.8 (7th Cir. 1988), *amended by* 866 F.2d 228 (1989)— were anything more than the result of mere negligence. Savasta provided a plausible explanation for why he prepared the notice and letter: he looked at the most recent documents for a case that was over twenty years old and that had a fairly lengthy procedural posture. This explanation, coupled with the fact the Commission issued the Certificate of Special Parole prior to Matamoros' criminal conduct on September 9, 2005, indicates that what transpired was more than likely the result of an inadvertent oversight. We do not view the record as demonstrating a situation in which Savasta or the Commission affirmatively concealed a material fact or engaged in "ongoing active misrepresentations." *Cf. Watkins v. United States Army*, 875 F.2d 699, 707-09

(9th Cir. 1989). Matamoros urges us to consider that "it was clearly noted in the Commission's file that Matamoros had an additional three-year [special parole] term to serve," but we do not see how this conclusory statement in any way undermines Savasta's explanation.

Estoppel will only be applied "where justice and fair play require it." *See Johnson v. Williford*, 682 F.2d 868, 871 (9th Cir. 1982). This case is not one of those situations. Ultimately, Matamoros' own criminal conduct is the basis for his continued incarceration and the detainer. We find nothing unfair about this case that would justify the extreme remedy of applying the doctrine of equitable estoppel against the government.

## III.  CONCLUSION

For the reasons explained above, we AFFIRM the denial of Matamoros' habeas petition.